Richard John MERCY et al., Plaintiffs,

v.

COUNTY OF SUFFOLK et al., Defendants.

No. CV 81–1754.

United States District Court,
E. D. New York.

Feb. 12, 1982.

Arnold B. Firestone by Adrienne Mirro, Hauppauge, N.Y., for plaintiffs.

David J. Gilmartin, Suffolk County Atty. by Erick F. Larsen, Hauppauge, N.Y., Cahill, Gordon & Reindel by John R. Vaughan and John C. Koutsos, New York City, for Suffolk County.

## MEMORANDUM AND ORDER

GEORGE C. PRATT, District Judge:

In this action brought pursuant to 42 U.S.C. § 1983, plaintiffs allege that the defendant police officers assembled at their home in "mob fashion" and, without a warrant, falsely arrested four of the plaintiffs, assaulted and battered all of the plaintiffs, and destroyed their property. Defendants deny these allegations and state that the altercation was initiated by plaintiffs when defendants attempted to arrest several of the plaintiffs on a charge of assaulting the manager and a customer of a local store.

At a status conference held early in this litigation, parties received a copy of the standard discovery order which the court issues in § 1983 cases involving charges of police brutality (See appendix). By motion returnable February 3, 1982, defendants move for a protective order to prevent plaintiffs from obtaining two types of documents they were ordered to turn over in ¶ 2 of the discovery order, namely, the narrative report of the internal affairs section and the statements of individual police officers given to the internal affairs section during that section's investigation of plaintiffs' administrative complaint against defendants. Defendants have provided these documents to the court for *in camera* inspection.

After the incident which is the subject of this litigation, plaintiff Richard Mercy filed with the Suffolk County Police Department a complaint against the police officer's conduct, and an investigation was initiated by the internal affairs section of the department.[1] As in most such investigations by the internal affairs section, statements were taken from the individual police officers involved, setting forth each officer's version of the incident. At the end of the investigation, the officer in charge prepared a "narrative report" consisting of 10 pages in which he summarized the facts and made several observations.

Defendants argue that there are three grounds for the protective order they seek: (1) executive privilege; (2) the work product privilege; and (3) the attorney-client privilege. First, they contend that in this case the material at issue should be protected by executive privilege because disclosure of the information would frustrate the public policy served by the activities of the internal affairs section. They claim that the court's requirement that the documents at issue be released to plaintiffs in § 1983 actions will chill intradepartmental investigations because police officers will not be candid in their individual reports or in the

---

1. The internal affairs section of the Suffolk County Police Department's Inspectional Services Bureau investigates civilian complaints concerning police conduct. Its stated purpose, as articulated by defendants, is to investigate such complaints to determine if remedial action with respect to individual police officers or the department as a whole is necessary. In this case, Lieutenant William O'Kula conducted the investigation by gathering all police documents relating to the incident, and taking statements from civilian witnesses and from the officers present during the incident. He authored the "narrative report" which defendants seek to conceal.

narrative report made at the end of the investigation.

█ If defendants are saying that police officers are more likely to be untruthful if they know potential plaintiffs might receive their reports than they ordinarily are when they are faced with possible departmental disciplinary action, the court does not accept their argument. The court recognizes that police department self-evaluation and remedial action do serve an important public policy, but such policy will not be hindered by the disclosure ordered here. On the contrary, limited disclosure can only further this policy. These investigations are conducted, at taxpayer expense, to determine whether the procedures of the department or individual police officers were responsible for the complained-of incident, and whether disciplinary or other remedial action is necessary to prevent the recurrence of similar incidents. No legitimate purpose is served by conducting the investigations under a veil of near-total secrecy. Rather, knowledge that a limited number of persons, as well as a state or federal court, may examine the file in the event of civil litigation may serve to insure that these investigations are carried out in an even-handed fashion, that the statements are carefully and accurately taken, and that the true facts come to light, whether they reflect favorably or unfavorably on the individual police officers involved or on the department as a whole. The claim of executive privilege is therefore rejected.

█ Defendants' second argument is that the material at issue falls within the work product privilege. FRCP 26(b)(3). The court fails to see how these reports can be termed work product: they were prepared pursuant to the normal police practices of conducting such investigations after a complaint is filed. The "mere possibility" of litigation is insufficient to prevent disclosure. In addition, the materials are primarily factual accounts of the events at issue in this case, and facts are not protected by the attorney's work product privilege. Moreover, the materials contain no evidence of counsel's legal analysis, theories of the case,

or anticipated strategy should litigation ensue. The court concludes that these documents and reports were prepared in the ordinary course of business pursuant to the internal affairs section's duty to investigate plaintiff's complaint, and as such are not shielded from discovery as work product. *See, e.g., Diamond v. City of Mobile*, 86 F.R.D. 324, 328, 329 (S.D.Ala.1978); *Dos Santos v. O'Neill*, 62 F.R.D. 448, 451 (E.D. Pa.1974); *Wood v. Breier*, 54 F.R.D. 7, 11–13 (E.D.Wis.1972).

█ Similarly, defendants' argument that these materials fall within the attorney-client privilege is without merit. Of course, the underlying facts involved in these communications are not privileged, and a party cannot refuse to testify to facts merely because he has later communicated them to his lawyer. *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 686, 66 L.Ed.2d 584 (1981). As to the communication of those facts, such communications are protected by the privilege only when they are between attorneys and their clients. At the time of the investigation, none of the participants had any communications with his attorney. The central purpose of internal affairs' investigation was to determine within the administrative procedures of the police department whether any disciplinary action should be taken against certain police officers as a result of the incident complained of. The "communications" in each instance were not between attorney and client, but between one police officer and another who was carrying out an investigative function. None of the policies underlying the attorney-client privilege would be served by preventing disclosure here. Therefore, neither the individual police officers' reports nor the narrative report of the investigating officer falls within the attorney-client privilege.

The overriding issue in this case and others involving claims of police brutality is one of fairness in the litigation process. The court developed its standard discovery order because of the repetitive nature of this type of litigation, and the similarity of the claims made and the defenses raised.

In an overwhelming number of these cases, plaintiffs are from the lower economic strata of society and very often have a history of being in trouble with the police. The attitude of the defendants in these cases usually falls far short of the cooperative search for the truth that litigation ideally should be. Very often, the defendants refuse even to give plaintiff the names of the officers who were involved in the alleged incident, thus requiring plaintiffs to engage in costly discovery merely to reach the point where they know the names of the parties they are suing. In this court's experience, of the many different police departments who have appeared as defendants, Suffolk County has been one of the most reluctant to cooperate in that and other disclosures.

When a formal complaint is made about a police officer, the internal affairs section investigates. In considering whether the report of that investigation should be made available to a plaintiff, the court recognizes that plaintiffs in these cases could ultimately obtain the information by, in effect, duplicating the efforts of the internal affairs section and engaging in extensive discovery. But such an approach would cause a large expenditure of time and money on both sides, money which has already been spent once by the county to create the internal affairs report. Most of this extra expense can be avoided by simply making the internal affairs file available to plaintiff.

The internal affairs file is prepared at public expense, for a public purpose, and the public has an interest both in the use to which its contents are put and in avoiding further expense to duplicate its contents. The material in the file is certainly relevant, since it deals solely with the incidents which gave rise to the litigation. Its availability pursuant to the court's discovery order enables a plaintiff, in the early stages of litigation, to identify the proper individual defendants as well as the circumstances surrounding the incident without costly discovery. In short, disclosure of the file uniquely serves the major objective of all the Federal Rules of Civil Procedure, "to secure the just, speedy, and inexpensive determination of every action". FRCP, Rule 1.

Defendants are not harmed by this procedure, because it does no more than expedite and facilitate the truth-seeking function of litigation. Frequently, by making plaintiff's burden easier, defendants are benefited because a successful plaintiff in a § 1983 action is entitled to attorneys' fees, which defendants will be required to pay if they lose the lawsuit. 42 U.S.C. § 1988.

Finally, the court is surprised at defendant Suffolk County's resistance to the disclosure of these documents, since such resistance can only be interpreted as an intent to use artificial, technical objections in order to make the task of a litigating plaintiff in a civil rights suit more difficult. One might think that the duty of a government in a democracy is to seek the truth, to simplify the litigation process, and to reach a fair, open and honest determination on the merits whenever the conduct of one of its officers is claimed to have infringed the constitutional rights of one of its citizens.

In that spirit the court's discovery order has been willingly accepted and complied with by Nassau County, and no one there has complained that it has resulted in less candor during internal affairs investigations. Yet, Suffolk County has not only opposed the discovery order and its related search for the truth, but in doing so it has retained outside counsel, at considerable expense to the county, to prepare briefs and appear for oral argument. The net result is an expenditure of more time and yet further expense to the taxpayers of Suffolk County who in the end must pay the bill. Of course, if the plaintiffs are successful in this lawsuit, the taxpayers of Suffolk County will also pay for the time spent by plaintiffs' counsel in opposing this motion.

For the reasons stated, defendants' motion for a protective order is denied. Defendants having shown no "special circumstances that warrant an exception" to the standard order, they are directed to supply plaintiffs' attorney with a copy of the inter-

nal affairs section's narrative report and the statements by the individual police officers made to the internal affairs section within 10 days of the date of this order.

SO ORDERED.

## APPENDIX

### ORDER

In this action alleging police misconduct brought under 42 USC § 1983, the court enters this standard order governing certain aspects of discovery which have arisen frequently in other similar cases. Unless special circumstances require different results, defendants are required within 30 days of the date of this order to disclose to plaintiff, by providing copies or making the originals available for copying, the following documents:

1. All records generated by the police defendants and their departments that pertain to the incident complained of, including without limitation, memo book entries, arrest reports, field notes, field reports, incident reports, accident reports, injury reports, log entries, and hospital records.

2. All records of the investigation and findings of the internal affairs or inspection department that investigated the incident. Those records are produced subject to a protective order which restricts their use so that without further order of the court the records produced may be used only by plaintiff's attorney and those people employed by plaintiff's attorney who are assisting the attorney in preparing the action for trial.

It is further ordered that if the issues of the case warrant it, and if plaintiff's attorney so requests within 14 days of this order, defendants shall deliver to the court for *in camera* inspection the personnel files of the individual police defendants. Before delivering these files, however, defendants' attorney shall mark the files as to all papers dealing with other incidents, complaints, or charges of misconduct against the defendant police officers, and shall include as a separate sheet attached to the file a brief summary listing those incidents, complaints and charges together with a reference to

the documents by date or other locating device.

This order is entered without prejudice to other specific discovery that plaintiff may wish to conduct, and without prejudice to defendants' right to bring to the court's attention, within 14 days, any special circumstances that warrant an exception to the above standard procedure.

SO ORDERED.