**Marlon SEGURA, and Mary Segura, Plaintiffs,**

v.

**CITY OF RENO, Joseph Walker, Ramon Barboza, Robert Bradshaw and Kevin McDonnell, Defendants.**

**No. CV–R–86–57–ECR.**

United States District Court, D. Nevada.

May 5, 1987.

Robert R. Hager, Reno, Nev., for plaintiffs.

Jack Angaran, Reno, Nev., for defendants.

## ORDER

EDWARD C. REED, JR., Chief Judge.

Pursuant to the order of the Court, the defendants have supplied the Court various documents for *in camera* inspection. These documents consist of personnel files of two defendants, and the Internal Affairs Division investigation conducted by the Reno Police regarding the incident which is the basis of this lawsuit. After *in camera* inspection, it appears that only portions of the IAD report are relevant and unprivileged, and they alone will be produced.

## PERSONNEL FILES

█ The vast majority of the documents contained in the personnel files of defend-

ants Walker and Barboza are irrelevant, as they are not reasonably calculated to lead to admissible evidence. Fed.R.Civ.P. 26(b). There are some documents, however, which could arguably fall within that category. These documents consist of memoranda of previous incidents in which the defendants were accused of excessive use of force. All of these incidents were investigated, and where the department found that excessive force had been utilized, the officer was disciplined. Thus, it cannot be said that this information displays the policy and practice of the Reno Police to fail to train and supervise their officers adequately. Indeed, these documents show that the policy of the department *is* to train and supervise adequately. The documents are not discoverable on that basis.

█ It might be argued that the documents could show that Police Chief Bradshaw knew of these officers' past involvements with excessive force, and that he failed to supervise their training adequately. In so doing, defendant Bradshaw might then be liable for punitive damages. The complaint in this case names Bradshaw only in his official capacity, however, and alleges that he is liable for failing to institute the general policy and procedures for the training of his officers. It does not allege that he is liable for failing to supervise these officers personally. Thus, the documents will not be released on that basis.

█ The plaintiffs might further contend that the documents could lead to admissible evidence against the individual officers in question, as these past incidents of excessive force might bear on the case at issue. This sort of "past conduct" evidence is not admissible in federal courts, with very narrow exceptions. Fed.R.Evid. 404(b). It further appears that the documents are not likely to lead to admissible evidence. The liability of the individual police officer arises out of this particular incident. Evidence of other similar incidents could only show a propensity for excessive use of force. This is the sort of "conduct in conformity with character" evidence which § 404(b) prohibits. The personnel files need not be produced on this basis either.

INTERNAL AFFAIRS DIVISION REPORT

It does appear that the IAD investigation must be produced, although for a limited purpose. As is noted in the Federal Rules of Civil Procedure, all material which is relevant may be discovered. "Relevant" for the purposes of discovery is defined as reasonably calculated to lead to admissible evidence. Fed.R.Civ.P. 26(b). Recent Ninth Circuit case law indicates, however, that IAD reports may not be sufficiently related to admissible evidence as to be discoverable. In *Maddox v. City of Los Angeles*, 792 F.2d 1408 (9th Cir.1986), the court held that Internal Affairs investigations and measures taken as a result of those investigations are remedial measures. *Id.*, at 1417. As such, the court found that they are inadmissible at trial under Fed.R. Evid. §§ 403 and 407.

█ This case would seem to prohibit the discovery of IAD investigations as well. One could argue that since the IAD reports themselves are not admissible at trial, they could also not lead to admissible evidence. This, however, would be an unduly restrictive reading of the remedial measures rule. Section 407 indicates that evidence of remedial measures will be inadmissible to prove negligence or culpability in connection with the event. That provision does allow admission of remedial measures to prove ownership, control, the feasibility of precautionary measures if controverted, and to impeach.

█ In this case, the IAD investigation consists mostly of summarized fact statements given by the plaintiffs and the police officers in question. Because the statements were made at an earlier time, their value as impeachment material is clear. The fact summaries in the IAD report are thus relevant, and should be produced on that basis. For ease in identification, the Court has numbered the pages of the IAD report consecutively. The numbers of the pages which must be produced are 10 through 26, inclusive. The portion of the IAD report that contains disciplinary recommendations, on the other hand, would be

of no impeachment value. This portion (pages 1 through 9, and 17 through 30) need not be produced as it is irrelevant.

Defendants object further to the production of this report on the basis that it is shielded by the executive privilege. The leading case on the assertion of executive privilege with respect to police files is *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D.Pa.1973). In that case, the plaintiffs sought to discover certain police investigation reports relating to the shooting death of their father. The defendant claimed that all of these documents were privileged, and need not be produced.

In finding that the executive privilege could not be extended to cover these investigative files, the court noted that a delicate balance had to be struck between the confidentiality of government information and the right of a litigant to obtain the data needed to prosecute his action. In weighing these competing interests, the court developed the following ten-factor test:

(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Id.*, at 344; *see also Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1342 (D.C.Cir.1984); *Urseth v. City of Dayton*, 110 F.R.D. 245, 253 (S.D.Ohio 1986); *Elliot v. Webb*, 98 F.R.D. 293, 297 (D.Idaho 1983).

■ Application of the *Frankenhauser* standards in this case indicates that the IAD report must be disclosed. First, the infrequent disclosure of these reports pursuant to court order, such as in this case, will not prevent citizens from revealing information to the police. The second factor has no application in this case, in that there are no undisclosed informants named in the IAD report. It also appears that disclosure will not chill the police self-evaluative process, as the Court will limit disclosure to the factual discussion contained in the report. As stated above, any evaluative summaries and recommendations regarding discipline are not relevant to the issues in this suit, and need not be produced.

No criminal charges were ever filed against the plaintiffs as a result of this incident, and it appears that all police investigation of the altercation has long since terminated. There is thus no possibility of interfering with an ongoing investigation. It does appear, however, that some intradepartmental disciplinary proceedings have been brought as a result of the investigation, but these proceedings would have been concluded long ago, so there is no possibility of interfering with them.

It does appear that the plaintiffs' suit is non-frivolous and brought in good faith, as the allegations of the complaint are substantial, and could give rise to liability if proved at trial. The information contained in the report is also not available from another source, as the police investigation was conducted promptly after the incident occurred. Because the statement of a witness taken shortly after the incident occurred is of extreme value in the fact-finding process and for impeachment, the information in the IAD report is not available to the plaintiffs from other sources. *See Frankenhauser, supra*, at 345. Finally, because of the "freshness" of the IAD report, it may be of crucial import to the plaintiffs' case. *Id.* The IAD report, less the evaluations and recommendations, must therefore be produced.

IT IS, THEREFORE, HEREBY ORDERED that the plaintiffs' motion to compel discovery is granted in part, and denied in part.

IT IS FURTHER ORDERED that the defendants shall not be required to produce any part of the personnel files of defendants Walker and Barboza.

IT IS FURTHER ORDERED that the defendants shall produce the fact summary of the Internal Affairs Division report, pages 10 through 26. Any evaluative summaries, disciplinary recommendations and intra-departmental memoranda regarding discipline, pages 1 through 9 and 27 through 39, shall be redacted and need not be produced.

IT IS FURTHER ORDERED that the *in camera* documents shall be sealed, and shall remain part of the record. The defendants shall be allowed access to the *in camera* copy of the IAD report so as to ascertain which portions thereof must be produced.