Melvin KING, Plaintiff,

v.

Lawrence CONDE, et al., Defendants.

William RYDSTROM and Steven Gentile, Plaintiffs,

v.

COUNTY OF SUFFOLK, et al., Defendants.

Nos. CV–87–3317 (JBW), CV–87–2359 (JBW).

United States District Court, E.D. New York.

June 15, 1988.

Arthur V. Graseck, Jr., Port Washington, N.Y., for Melvin King.

James I. Meyerson, Jonathan C. Moore, New York City, for Rydstrom and Gentile.

Robert H. Cabble, Asst. Co. Atty., Suffolk County Dept. of Law, Hauppage, N.Y., for Conde, et al.

Debra A. Urbano, Asst. Co. Atty., Suffolk County Dept. of Law, Hauppauge, N.Y., for Suffolk County.

## MEMORANDUM AND ORDER ON DISCOVERY OBJECTIONS

WEINSTEIN, District Judge:

Both of these cases concern disputes over the discoverability of police personnel files, complaint records, and other information sought by plaintiffs in federal civil rights actions against the Suffolk County police department. These cases involve only the files of the police officers who are defendants and thus avoid the more vexing issues raised when records of other officers are sought in an attempt to prove the practice and policy of a municipal government.

Reluctance by the defendants to reveal information in their files in the many cases in this district involving police officers of Suffolk, Nassau and New York City has led to repeated discovery disputes and some arguably inconsistent rulings by our

magistrates. Yet the general principles favoring revelation, with limitations and protections only where the need for them can be demonstrated, have been repeatedly stated by this court. The two instant cases provide the occasion for a restatement of our practice. It should permit future parties to avoid unnecessary applications to our magistrates and appeals to our judges. Suggestions to that end are made in the conclusion of this memorandum.

## I. Facts

### A. No. CV-87-3317

In CV-87-3317, Melvin King was arrested by two Suffolk County police officers, Lawrence Conde and Eugene Walsh. At his state court criminal trial, the jury acquitted. King is now suing the County and the officers, claiming that they employed excessive force and that his prosecution was malicious. 42 U.S.C. § 1983. The Suffolk County Department of Law is defending the suit on behalf of itself and the two police officers.

King served interrogatories and document demands on defendants. The document requests sought, *inter alia*, records of any complaints against the officers and of any disciplinary actions or internal investigations brought by the police department against the officers. The interrogatories also sought the officers' own recollections of any such events. The County objected to several of the requests, chiefly on the ground that New York Civil Rights Law § 50-a protects "personnel records" of police officers from disclosure unless an *in camera* review first determines the documents to be "relevant and material." N.Y.Civil Rights Law §§ 50-a(1), 50-a(3).

Magistrate Jordan, supervising discovery in the case, ordered that the defendants turn over all requested documents to him for *in camera* review, in accordance with the New York Civil Rights Law. He also ordered that the defendants comply with the interrogatory portions of the requests, without any *in camera* review; his reason was that "the cited statutes [New York Civil Rights Law § 50-a and related state law provisions] protect the records, not the defendants' knowledge of facts contained therein." Magistrate's Decision and Order No. 1, No. 87-CV-3317 (E.D.N.Y. April 8, 1988).

Defendants now appeal, seeking *in camera* review of both the interrogatory responses and the records. Plaintiff King has not objected to the *in camera* review of the records themselves.

### B. No. CV-87-2359

William Rydstrom and Steven Gentile were involved in an altercation with Suffolk County police officers at a diner. They were subsequently charged with robbery and assault. After an initial mistrial, both were acquitted of the assault counts, and the robbery counts were dismissed on appeal. Rydstrom and Gentile are now suing the County and the officers, claiming that the charges were brought improperly to further a cover-up by the officers of the officers' own improper conduct, and that the prosecution was malicious. 42 U.S.C. § 1983.

Plaintiffs made discovery demands seeking, *inter alia*, records of any complaints against the officers and of any disciplinary actions or internal investigations brought by the police department against the officers. The County objected to many of the requests. It relied in part on New York Civil Rights Law § 50-a and requested an *in camera* review of all the internal documents. Magistrate Jordan agreed with defendants and ordered that they turn over all requested documents to him for *in camera* review.

Plaintiffs Rydstrom and Gentile now appeal from the Magistrate's direction of *in camera* review. They seek direct discovery of all materials, without any *in camera* detour.

## II. Law

### A. Applicability of State Statutes

The County and its police officers seek refuge under New York privacy statutes. The magistrate's orders appear to be explicitly based on New York Civil Rights Law § 50-a and implement the magis-

trate's reading of what that law requires: *in camera* review of police officers' "personnel records," but direct discovery of the officers' personal knowledge of the events described in the records.

New York state law does not govern discoverability and confidentiality in federal civil rights actions. Federal discovery is somewhat more liberal than New York State discovery. *Compare, e.g.,* N.Y. C.P.L.R. 3101 *with* Fed.R.Civ.P. 26. Moreover, there is no federal analog to New York Civil Rights Law § 50-a.

Questions of privilege in federal civil rights cases are governed by federal law. *See* Fed.R.Evid. 501; *Von Bulow v. Von Bulow,* 811 F.2d 136, 141 (2nd Cir.1987); *American Civil Liberties Union of Mississippi v. Finch,* 638 F.2d 1336, 1342–43 (5th Cir.1981); *Kerr v. United States District Court for the Northern District of California,* 511 F.2d 192, 197 (9th Cir.1975), *aff'd,* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed. 2d 725 (1976); *Burke v. New York City Police Dept.,* 115 F.R.D. 220, 224 (S.D.N.Y. 1987); *Kelly v. City of San Jose,* 114 F.R.D. 653, 655–56 (N.D.Cal.1987); *Skibo v. City of New York,* 109 F.R.D. 58, 61 (E.D. N.Y.1985); *Brown v. Matias,* 102 F.R.D. 580, 581 (S.D.N.Y.1984); *Inmates of Unit 14 v. Rebideau,* 102 F.R.D. 122, 127 (N.D. N.Y.1984); *Lora v. Board of Education of the City of New York,* 74 F.R.D. 565, 569, 576 (E.D.N.Y.1977).

Rather than apply state privilege law to a federal civil rights claim, the magistrate must vindicate the purposes of federal discovery and privilege law. "If the Magistrate in fact applied the state law [New York Civil Rights Law § 50-a] directly, [instead of applying the federal law of privilege,] his decision would be in error." *Heywood v. Peterson,* No. 82–CV–4047, slip op. at 3 (E.D.N.Y. Oct. 19, 1983) (Glasser, J.). Because no federal rule exists governing the kinds of privileges asserted in these cases, *see* Proposed Fed.R.Evid. 509(c), 56 F.R.D. 183, 251–52 (1972) (unenacted), the magistrate must balance the interests favoring and opposing confidentiality in the discovery phase of the litigation.

The magistrate need not ignore state privacy rules. State rules may illustrate important privacy interests, and "a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Lora v. Board of Education,* 74 F.R.D. 565, 576 (E.D.N.Y.1977) (quoting *United States v. King,* 73 F.R.D. 103, 105 (E.D.N. Y.1976)). *See also Kelly v. City of San Jose, supra,* 114 F.R.D. at 656; *Skibo v. City of New York, supra,* 109 F.R.D. at 61.

Simple direct application of the state rule would be undesirable and improper. It would often frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983. *See United States v. Procter & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958); *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451 (1947); *Gary Plastic Packaging Corp. v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 756 F.2d 230, 236 (2nd Cir. 1985). "[O]rdinarily the overriding policy is one of disclosure of relevant information in the interest of promoting the search for truth in a federal question case." *Burke v. New York City Police Dept.,* 115 F.R.D. 220, 225 (S.D.N.Y.1987).

Federal law disfavors privileges barring disclosure of relevant evidence, and limits "even those rooted in the [federal] Constitution." *Herbert v. Lando,* 441 U.S. 153, 175, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115 (1979); *cf. United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed. 2d 1039 (1974). Mere adherence to state rules would often improperly elevate the role of privileges in federal question cases. Moreover, state rules protecting state officers must always be viewed with caution because they may be parochially designed to thwart federal interests:

It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose cen-

tral purpose is to protect citizens from abuses of power by state and local authorities. If state law controlled, state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims.

*Kelly v. City of San Jose,* 114 F.R.D. 653, 656 (N.D.Cal.1987). *See also Carr v. Monroe Manufacturing Co.,* 431 F.2d 384, 389 (5th Cir.1970), *cert. denied sub nom. Aldridge v. Carr,* 400 U.S. 1000, 91 S.Ct. 456, 27 L.Ed.2d 451 (1971) ("special danger" in permitting state governments to shield their own agents with a state-defined privilege); *Garner v. Wolfinbarger,* 430 F.2d 1093, 1100 (5th Cir.1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971) ("In federal question cases ... federal substantive rights may be compromised if a stringent state rule of evidence is applied.").

■ It is not clear whether in the present cases the magistrate improperly applied the state rule "directly," or whether he properly relied on it as a helpful guide in the spirit of comity. *See Breed v. United States District Court,* 542 F.2d 1114, 1115 (9th Cir.1976) (state privilege law, while not binding in federal question case, can be a useful referent). In the future, magistrates confronted with state privilege laws in federal civil rights claims should make explicit whether, to what extent and for what reasons they are borrowing from the state policy. As pointed out below, the state rule is only one of several factors to be considered by the court in resolving a discovery dispute.

## B. Procedure for evaluating the privilege

The federal courts must balance the interests favoring and disfavoring disclosure in order to resolve discovery disputes of this kind. An initial question is what kind of disputes these are: what kind of privilege is at stake? Different courts have reached diverse results in this area, and have often inappropriately applied standards developed for one kind of privilege to cases involving a fundamentally different privilege. The result is that federal privilege doctrine in civil rights cases brought against police officers has sometimes become muddled. *See Kelly v. City of San Jose,* 114 F.R.D. 653, 655–59 (N.D.Cal.1987) (describing confusions).

Civil rights lawsuits against local law enforcement officers occur with sufficient frequency in this district, and involve such recurringly similar struggles over the information in the hands of the officers or the police departments, that the test specifically tailored to resolving the discovery disputes in those cases needs repeating. One judge has remarked that New York Civil Rights Law § 50–a "is raised in practically every action under 42 U.S.C. § 1983 against state, county and city law enforcement officers." *Inmates of Unit 14 v. Rebideau,* 102 F.R.D. 122, 129 (N.D.N.Y. 1984).

The procedure and test described below govern all discovery disputes over police records in federal civil rights actions in this district, regardless of the label used to refer to the privilege. Magistrate Wayne Brazil's thoughtful opinion in *Kelly v. City of San Jose,* 114 F.R.D. 653 (N.D.Cal.1987) provides a convenient starting point in understanding the issues involved in this "official information" privilege. For other useful recent discussions, see *Segura v. City of Reno,* 116 F.R.D. 42 (D.Nevada 1987); *Burke v. New York City Police Dept.,* 115 F.R.D. 220 (S.D.N.Y.1987); *Skibo v. City of New York,* 109 F.R.D. 58 (E.D.N.Y.1985); *Cincotta v. City of New York,* No. 83–CV–7506, slip op. (S.D.N.Y. Nov. 14, 1984); *Marshall v. New York City Transit Authority,* No. 84–CV–1033, slip op. (S.D.N.Y. May 24, 1984); *Elliot v. Webb,* 98 F.R.D. 293 (D.Idaho 1983); *Mercy v. County of Suffolk,* 93 F.R.D. 520 (E.D. N.Y.1982). See also the treatment of the "executive" privilege, *e.g., Segura v. City of Reno,* 116 F.R.D. 42 (D.Nev.1987); *Frankenhauser v. Rizzo,* 59 F.R.D. 339 (E.D.Pa.1973), the "self-critical analysis" or "deliberative" privilege, *e.g., Burka v. New York City Transit Authority,* 110 F.R.D. 660 (E.D.N.Y.1986); *Skibo v. City of New*

*York,* 109 F.R.D. 58 (E.D.N.Y.1985), and other privileges, *e.g., Kelly, supra,* 114 F.R.D. at 656–57 (enumerating purported privileges).

■ In order to assert a claim of privilege against disclosure of police materials to a plaintiff raising federal civil rights claims against a police defendant, the officers or the police department must do more than alert the court to the state privilege law or the generalized policies which support it. The police must make a "substantial threshold showing," *Kelly, supra,* 114 F.R.D. at 669, that there are specific harms likely to accrue from disclosure of specific materials, based upon the balancing test set forth below.

■ The party seeking to invoke the privilege bears the burden of justifying its application. *See Von Bulow v. Von Bulow, supra,* 811 F.2d at 144; *In re Grand Jury Subpoena dated January 4, 1984,* 750 F.2d 223, 224 (2d Cir.1984); *Burke v. New York City Police Department, supra,* 115 F.R.D. at 224. The government must specify "which documents or class of documents are privileged and for what reasons." *Kerr v. United States District Court, supra,* 511 F.2d at 198. This threshold showing must explain the reasons for nondisclosure with particularity, so that the court can make an intelligent and informed choice as to each requested piece of information. "Unless the government, through competent declarations, shows the court *what interests* [of law enforcement or privacy] would be harmed, *how* disclosure under a protective order would cause the harm, and *how much* harm there would be, the court cannot conduct a meaningful balancing analysis." *Kelly, supra,* 114 F.R.D. at 669 (emphasis in original). If the police make no such showing, the court has "no choice but to order disclosure." *Id.; see also Johnson v. McTigue,* — F.Supp. —, No. CV–85–5546, slip op. (S.D.N.Y. July 16, 1986) (ordering direct disclosure without *in camera* review); *Martin v. New York City Transit Authority,* No. CV–83–3991, slip op. (S.D.N.Y. Oct. 17, 1983) (same).

■ The privilege will be deemed asserted when the objecting party timely invokes the privilege as to each discovery request thought to invade the privilege. Accompanying these objections must be "a declaration or affidavit, under oath and penalty of perjury, from a responsible official within the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration." *Kelly, supra,* 114 F.R.D. at 669. This statement must be based on personal review of the documents by an official in the police agency (not the defendants' attorney) and must explain (not merely state conclusorily) how the materials at issue have been generated or collected; how they have been kept confidential; what specific interests (e.g. of the police officers, of law enforcement, or of public concern) would be injured by disclosure to plaintiff, to plaintiff's attorney, and to the public; and the projected severity of each such injury. This procedure should discourage applications for non-revelation in all but deserving cases. Pro forma applications may lead to Rule 11 sanctions.

■ If a privilege claim is properly interposed, the parties must attempt to agree on a cooperative resolution of the matter as directed by the Standing Orders of the Court on Effective Discovery in Civil Cases (E.D.N.Y. March 1, 1984; as amended Feb. 27, 1987). Standing Order 6(a) requires the attorneys to "confer in good faith in person or by telephone in an effort to resolve the dispute" before seeking any judicial resolution. If no cooperative resolution is possible, the plaintiff may move to compel the disclosure of the materials.

■ Plaintiff's motion to compel must be accompanied by an affidavit explaining (not merely stating conclusorily) how the requested material is relevant to the specific lawsuit or is reasonably calculated to lead to the discovery of admissible evidence; how the plaintiff or the public would be injured by nondisclosure of each item; and the severity of each such injury. Plaintiff may also submit a brief arguing in favor of disclosure.

After giving defendants an opportunity to respond (with a brief and possible supplemental affidavits or declarations), the court can determine whether the defendants have made the requisite threshold showing to invoke the privilege. If the court finds the defendant has not satisfied its threshold burdens, direct disclosure is in order. If the threshold burdens are met, the court may then review the materials at issue *in camera* and decide which, if any, to withhold from disclosure. *See Kerr v. United States District Court, supra,* 426 U.S. at 405–06, 96 S.Ct. at 2125 (upon appropriate threshold showing, "this Court has long held the view that *in camera* review is a highly appropriate and useful means" of handling this kind of privilege claim).

At each point both sides must consider the effect of a protective order restricting disclosure to the plaintiff and the plaintiff's attorney, or to the plaintiff's attorney alone. Such an order can mitigate many if not all of the oft-alleged injuries to the police and to law enforcement. *See Kelly, supra,* 114 F.R.D. at 666; *Mercy v. County of Suffolk,* 93 F.R.D. 520, 524 (E.D.N.Y.1982) (sample order). Protective orders should not be granted without good reason. They restrict public access to discovery materials and depart from the "general proposition [that] pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings." *American Telephone & Telegraph Co. v. Grady,* 594 F.2d 594, 596 (7th Cir.1978), *cert. denied,* 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979). Under Fed.R.Civ.P. 26(c) the burden is on the party seeking the protective order to show "good cause," with particular factual support, why the order is necessary. *See General Dynamics Corp. v. Selb Manufacturing Co.,* 481 F.2d 1204, 1212 (8th Cir.1973). Lawfulness of police operations is a matter of great concern to citizens in a democracy and protective orders must not be granted without that public interest in mind. The parties and the court should consider carefully the benefits and costs of a properly designed protective order. "Routinely" issuing protective orders, *see*

*Kelly, supra,* 114 F.R.D. at 662, will not necessarily promote justice or the proper balance of interests; in particular cases, the court may find them an effective way to permit discovery without undermining law enforcement.

The court should also be alert for opportunities to redact the submitted documents to remove sensitive bits of information not useful to the plaintiffs. An obvious example is the desirability of deleting officers' home addresses when the lawsuit involves past violence between the officers and the plaintiffs. Disclosure of that information, in some cases, might put the officers at risk without protecting any of the plaintiffs' legitimate interests in discovery. Such redactions must involve particular applications of the balancing test set forth in this opinion to specific pieces of data, not merely the court's unguided use of in camera review to edit the materials as it pleases. Every redaction must pass the balancing test.

## C. Balancing test

The "official information" privilege and its kin are not absolute. At each point that defendants make a claim of privilege to the court, the court must evaluate and weigh the interests on each side of the question. There will be two main points for application of the balancing test in the procedure described above. To summarize: First, based on the defendants' objections to disclosure and accompanying affidavits or declarations, the court must determine whether the defendants have made a substantial threshold showing that disclosure of specific information would result in specific harm to identified important interests. If such a showing is not made, the question is resolved in favor of direct disclosure.

Second, if the defendants do make such a showing, then the court must evaluate the plaintiffs' papers and affidavits supporting its motion to compel, the defendants' initial papers and supplemental papers in reply to the plaintiffs' papers, and the actual documents submitted for *in camera* review. The court must balance the interests favor-

ing and disfavoring disclosure, keeping in mind that the burden of persuasion rests on the party seeking to prevent disclosure. The court must also consider the value of appropriate protective orders and redactions.

We come then to the test itself. Several courts have suggested lists of factors to be weighed in similar tests. *See, e.g., In re Franklin Nat'l Bank Securities Litigation,* 478 F.Supp. 577, 583 (E.D.N.Y.1979) (five-factor test for executive privilege); *United States v. King,* 73 F.R.D. 103 (E.D.N.Y.1976) (five-factor test for disclosure); *Frankenhauser v. Rizzo,* 59 F.R.D. 339 (E.D.Pa.1973) (ten-factor test for executive privilege). Merely listing the factors to be balanced, without giving guidance on how to weigh each factor, is of little help in particular cases. *See Kelly, supra,* 114 F.R.D. at 661–62; *Northcross v. Board of Education,* 611 F.2d 624, 642 (6th Cir. 1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980) (criticizing unweighted checklists in attorneys' fee awards). The enterprise of suggesting weights for each interest is treacherous, for it risks being perceived as prejudging disputes in the abstract. Even Magistrate Brazil appears to treat the weighting of interests as essentially a ploy to nudge final outcomes toward one endpoint. *See Kelly, supra,* 114 F.R.D. at 661–62. The better understanding is that the discussion of the general importance of each set of interests can provide useful—but not decisive—content and guidance to applications of the balancing test in individual cases.

■■■ *Factors disfavoring disclosure.* Because these questions will first be posed when the defendants attempt to make a threshold showing of specific harm to disclosure, the interests disfavoring disclosure are discussed first. In order to make such a showing, the harms projected must be specific and substantial, as described above.

(1) Threat to police officers' own safety. Disclosure of certain information, such as officers' home addresses in cases involving past violence between the officers and the plaintiffs or other members of the community, might threaten the safety of the officers and their families. It may be prudent for the court to redact information of this kind if a real and credible danger is posed by disclosure.

■■■ (2) Invasion of police officers' privacy. Most information requested by civil rights plaintiffs in these lawsuits deals with professional personnel records, such as prior involvement in disciplinary proceedings or citizen complaints filed against the officers. The privacy interest in this kind of professional record is not substantial, because it is not the kind of "highly personal" information warranting constitutional safeguard. *See Whalen v. Roe,* 429 U.S. 589, 598–600, 97 S.Ct. 869, 875–76, 51 L.Ed.2d 64 (1977); *Barry v. City of New York,* 712 F.2d 1554, 1562 (2d Cir.), *cert. denied,* 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983). *Cf. Nixon v. Administrator of General Services,* 433 U.S. 425, 457, 97 S.Ct. 2777, 2797, 53 L.Ed.2d 867 (1977) (public official's privacy interest is in "matters of personal life unrelated to any acts done by them in their public capacity"). The privacy interest in nondisclosure of professional records should be especially limited in view of the role played by the police officer as a public servant who must be accountable to public review.

Some requests might touch on intuitively more private domains, such as an officer's psychiatric history, but even disclosures having "some effect on individual liberty or privacy" because of their personal nature are permissible when disclosure serves important public concerns. *Whalen v. Roe, supra,* 429 U.S. at 597, 97 S.Ct. at 875; *see Fraternal Order of Police, Lodge 5 v. City of Philadelphia,* 812 F.2d 105, 115 (3rd Cir.1987) (even personal privacy interests must be balanced against public need for disclosure). Medical records might also be protected by traditional doctor-patient privileges not within the scope of this discussion.

It is also important to note in this context that even the "privilege" embodied in New York Civil Rights Law § 50–a, and exclusively relied on by defendants, is not really a privilege in the sense that it could

justify complete refusal to disclose relevant evidence. It does not purposefully ensure the privacy of police officers against disclosure of sensitive information in litigation. Although the statute begins by calling the personnel records "confidential and not subject to inspection or review" except by court order, *see* New York Civil Rights Law § 50–a(1), all that section 50–a ultimately requires is that all personnel records be viewed *in camera* first, to determine their relevance; as long as a record is relevant, it must be disclosed to the plaintiff. *See id.*, New York Civil Rights Law § 50–a(3). The sole function of section 50–a is thus to protect irrelevant materials from disclosure: to prevent fishing expeditions, not to safeguard privacy itself. *See Matter of Capital Newspapers v. Burns*, 67 N.Y.2d 562, 505 N.Y.S.2d 576, 580, 496 N.E.2d 665, 669 (Ct.App.1986) (quoting *Matter of Capital Newspapers v. Burns*, 109 A.D.2d 92, 490 N.Y.S.2d 651, 654 (3d Dept. 1985) ("narrowly specific" purpose of section 50–a is to prevent " 'fishing expeditions' ")). What is felt to be private may just as well be relevant or irrelevant, depending on the particular discovery requests and the cause of action.

(3) Weakening of law enforcement programs. Disclosure of police procedure guides to the general public could compromise the effectiveness of law enforcement by revealing police tactics to sinister elements. Protective orders limiting disclosure to the plaintiffs' attorney may be especially apt remedies for this problem. *See Kelly, supra*, 114 F.R.D. at 666.

▄ Parties seeking to limit disclosure on this ground should be required to set forth in competent declarations the specific programs at risk, their value to law enforcement, and the extent of harm projected to be caused by disclosure. The declaration must also consider the mitigating effects of protective orders and redactions. These declarations themselves might be kept under seal.

▄ A more pointed menace to police effectiveness may arise if the civil rights plaintiff seeking internal police files is simultaneously (or reasonably likely to be in the future) the defendant in a criminal proceeding arising out of the incident in question. *See Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D.Pa.1973). In that event disclosure in the civil case could frustrate the criminal litigation. The court in the civil case should consider delaying the civil suit or a restrictive protective order before denying discovery altogether.

(4) Chilling of police internal investigative candor. Police departments frequently resist discovery on the ground that disclosure of internal files—both factual personnel files and "evaluative" or "deliberative" internal investigative files—would compromise internal police investigations by inhibiting the candor of police officers contributing information to those files.

▄ This argument is probably often overstated, and courts should be wary of relying on it in restricting discovery. First, the possibility of disclosure to civil rights plaintiffs is probably not of great import to the officers at the time they file their reports. Civil rights lawsuits are few and far between compared to the immediate and certain review by superiors within the police department and its internal investigative arm. *See Denver Policemen's Protective Association v. Lichtenstein*, 660 F.2d 432, 437 (10th Cir.1981). An officer's incentives to hide a friend's misconduct, or to be scrupulously forthcoming lest he be disciplined for having concealed information, are probably much more closely tied to the internal investigative machinery than to the fear of civil rights litigation. *See Wood v. Breier*, 54 F.R.D. 7, 12–13 (E.D.Wisc.1972) ("The officers who reported did so under threat of administrative sanctions knowing that their reports might be used against themselves or their fellow officers in either criminal or departmental disciplinary actions. It is doubtful that the addition of possible civil sanctions to criminal and departmental ones would end candor or result in refusal to make reports.").

An officer's financial responsibility for civil rights claims is likely to be slight (because he is relatively judgment proof or indemnified by his employer), whereas he (or his friends) may face termination or

prosecution in internal affairs investigations. In sum, disclosure to civil rights litigants is probably a minute influence on officers' candor. *See Kelly, supra,* 114 F.R.D. at 665 ("the possibility of disclosure to a civil litigant probably adds almost nothing to the pressure to dissemble that officers already would feel; those who are going to lie are going to do so regardless of whether there is some chance of disclosure to a citizen complainant.").

Second, there is no empirical evidence of which this court is aware supporting the "chilling" contention. *Accord Kelly, supra,* 114 F.R.D. at 664–65. Without some basis for believing that real police officers conceal or distort their statements to internal investigatory bodies, courts should reject this contention. *See Wood v. Breier, supra,* 54 F.R.D. at 13 (doubting much "real world" harm to police department's internal investigations from disclosure). This point underscores the responsibility of courts to restrict disclosure only on the basis of substantial showings of specific harm outweighing the specific interests favoring disclosure, and the responsibility to make that determination anew in each case.

▮ Third, if the fear of disclosure in civil rights lawsuits does have some real effect on officers' candor, the stronger working hypothesis is that fear of disclosure is more likely to increase candor than to chill it. The court in *Mercy v. County of Suffolk,* 93 F.R.D. 520 (E.D.N.Y.1982) spoke forcefully:

> On the contrary, limited disclosure can only further this policy [ensuring proper police conduct through police self-evaluation].... No legitimate purpose is served by conducting the investigations under a veil of near-total secrecy. Rather, knowledge that a limited number of persons, as well as a state or federal court, may examine the file in the event of civil litigation may serve to ensure that these investigations are carried out in an evenhanded fashion, that the statements are carefully and accurately taken, and that the true facts come to light, whether they reflect favorably or unfavorably on the individual police officers involved or on the department as a whole.

*Id.* at 522. Similarly, the court in *Kelly, supra,* 114 F.R.D. 653, concluded that disclosure will improve the honesty of internal affairs filings:

> [S]trong arguments can be advanced that it is the alternative in which there is some possibility of disclosure [that] is most conducive to candor.... In short, officers will feel pressure to be honest and logical when they know that their statements and their work product will be subject to demanding analysis by people with knowledge of the events under investigation and considerable incentive to make sure that the truth comes out (i.e., a civil rights plaintiff and her lawyer). Thus there is a real possibility that officers working in closed systems will feel less pressure to be honest than officers who know that they may be forced to defend what they say and report.

*Id.* at 665 (citation omitted). Ultimately, this debate requires empirical evidence. *See* Resnik, *Due Process: A Public Dimension,* 39 U.Fla.L.Rev. 405, 416 (1987). The burden rests on the party seeking to limit disclosure to show such empirical support.

▮ Courts should not expend too much effort trying to distinguish "factual" from "evaluative" information in these decisions. This distinction is likely to be quite elusive and often arbitrary. *See Burke v. New York City Police Department,* 115 F.R.D. 220, 231 & n. 9 (S.D.N.Y.1987). Rather, courts should examine specific objections to specific pieces of information in each case, applying a balancing test.

▮ (5) Chilling of citizen complainant candor. Defendants may argue that citizen complainants will be less vocal if their complaints against the police are subject to disclosure to civil rights plaintiffs. This, too, is an empirical question, but the more persuasive hypothesis is that disclosure will have no influence on citizen complaints. "It is not at all clear that people who feel aggrieved by actions of police officers would even think about the possibility that their complaints might be dis-

closed to another person who feels aggrieved by police officers." *Kelly, supra,* 114 F.R.D. at 666. Presumably those who did think about disclosure would ordinarily approve of it, because they would hope to assist others similarly aggrieved. *See id.* In the usual case, this factor should be accorded little weight. *See also Frankenhauser v. Rizzo,* 59 F.R.D. 339, 344 (E.D. Pa.1973).

A different question is posed if plaintiffs seek reports provided to the police by confidential informants, because revelation of the reports or their authors might well harm law enforcement or the informant. If such a request is made in discovery (e.g. where the police allege that their arrest of the plaintiff was based on informants' reports), the court's motives for conducting *in camera* review of those specific materials may be heightened. The burden will remain on the police to show why such materials should be reviewed *in camera* and why disclosure should be denied, especially in the context of an appropriate protective order.

(6) State privacy law. As described earlier, state privacy and privilege law may be a useful referent for courts in federal question cases, but in no event will that law be binding. *See Breed v. United States District Court,* 542 F.2d 1114, 1115 (9th Cir. 1976). The court should consider the policies underlying the state law and weigh those policies just as any other factors disfavoring disclosure, keeping in mind that state laws may work to protect state officials against the enforcement of federal rights, as discussed above.

██ In New York, courts should also bear in mind the limited purpose of New York Civil Rights Law § 50–a: to prevent fishing expeditions through the *in camera* procedure, but not to block discovery of relevant materials. *See* discussion of this point under factor (2) *supra.*

*Factors favoring disclosure.*

██ (1) Relevance to the plaintiff's case. This factor is at base a reminder of the fundamental policy that discovery should be broad and any relevant materials, including those reasonably calculated to lead to admissible evidence, should be accessible. *See United States v. Procter & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958); *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451 (1947); *Gary Plastic Packaging Corp. v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 756 F.2d 230, 236 (2nd Cir.1985). "[O]rdinarily the overriding policy is one of disclosure of relevant information in the interest of promoting the search for truth in a federal question case." *Burke v. New York City Police Dept.,* 115 F.R.D. 220, 225 (S.D.N.Y.1987). "The principle favoring full access by the courts and litigants to relevant information ... is an important foundation for the achievement of justice ... This principle is national policy of high rank, wholeheartedly endorsed and furthered by Congress." *Freeman v. Seligson,* 405 F.2d 1326, 1348 (D.C.Cir.1968).

The court should thus consider whether the materials sought are relevant to the plaintiff's cause of action. Discovery is of broader scope than admissibility, and discovery may be had of inadmissible matters. *See Trammel v. United States,* 445 U.S. 40, 48, 100 S.Ct. 906, 911, 63 L.Ed.2d 186 (1980); *Inmates of Unit 14 v. Rebideau,* 102 F.R.D. 122, 127 (N.D.N.Y.1984); 8 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2008.

██ (2) Importance to the plaintiff's case. The court must consider the plaintiff's need for the information, including the availability of the information from alternative sources. This factor has at times been viewed as the most important of all factors, *see, e.g., Crawford v. Dominic,* 469 F.Supp. 260, 263 (E.D.Pa.1979); *Culp v. Devlin,* 78 F.R.D. 136, 139–41 (E.D.Pa. 1978), or as "a most important factor," *Inmates of Unit 14 v. Rebideau, supra,* 102 F.R.D. at 128. Its significance, however, must not blind the court to other factors. *See Kelly, supra,* 114 F.R.D. at 663–64. As discussed below, the truly dominant interest will usually be the public policy underlying the federal civil rights laws, and those courts viewing the "impor-

tance to the plaintiff's case" as dispositive are no doubt incorporating that civil rights policy into their conception of "the plaintiff's case." The two interests ought to be considered separately.

One complication in the "availability from alternative sources" is that the more the information is elsewhere available, the less it is confidential. The court should attend to this possibility, for it may undermine the defendants' arguments against disclosure. A second complication is that the information available from the police may be of much better quality than that available elsewhere. "Thus, if the government cannot show that information of comparable quality is as efficiently available from alternative sources, this factor should weigh in favor of disclosure." *Kelly, supra,* 114 F.R.D. at 667.

■ Because the materials sought are in the possession of the defendant, the court should not require the plaintiff to prove the relevance of specific items, as the court did in *Elliot v. Webb,* 98 F.R.D. 293 (D.Idaho 1983), or to prove the information is unavaliable elsewhere. Rather, the court should err on the side of wider discovery. *See Kelly, supra,* 114 F.R.D. at 667–68.

■ (3) Strength of the plaintiff's case. The court should avoid permitting frivolous discovery, and so should try to discourage broad discovery in meritless actions. But this principle must not reach so far as to put the plaintiff in a Catch–22: the plaintiff may not be able to demonstrate the strength of his or her case without the requested materials themselves. Courts should therefore tread lightly on this rationale. "Doubts must be resolved, at the discovery stage, in favor of the [civil rights] claimant." *Kelly, supra,* 114 F.R.D. at 666.

(4) Importance to the public interest. The interest that without doubt looms largest in these cases is the public interest in giving force to the federal civil rights laws. "[T]hrough constitutional amendment and national legislation the people have made it clear that the policies that inform the federal civil rights laws are profoundly impor-

tant," *Kelly, supra,* 114 F.R.D. at 660. Lawsuits brought under 42 U.S.C. § 1983 require special attention to full disclosure:

> Each citizen "acts as a private attorney general who 'takes on the mantel of the sovereign,'" guarding for all of us the individual liberties enunciated in the Constitution. Section 1983 represents a balancing feature in our governmental structure whereby individual citizens are encouraged to police those who are charged with policing us all. Thus, it is of special import that suits brought under this statute be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden.

*Wood v. Breier,* 54 F.R.D. 7, 10–11 (E.D. Wisc.1972) (citations omitted). The paramount importance of federal civil rights policy has repeatedly been emphasized in cases much like the present one:

> In a federal civil rights action, a claim that the evidence is privileged "must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action ..." *Wood v. Breier,* 54 F.R.D. 7, 13 (E.D.Wisc.1972). *See also Lora,* 74 F.R.D. at 579.

*Skibo v. City of New York,* 109 F.R.D. 58, 61 (E.D.N.Y.1985). *See also American Civil Liberties Union of Mississippi v. Finch,* 638 F.2d 1336, 1343–44 (5th Cir. 1981); *Inmates of Unit 14 v. Rebideau,* 102 F.R.D. 122, 128 (N.D.N.Y.1984); *Lora v. Board of Education,* 74 F.R.D. 565, 578–79 (E.D.N.Y.1977); *Kinoy v. Mitchell,* 67 F.R.D. 1, 12 (S.D.N.Y.1975); *Gaison v. Scott,* 59 F.R.D. 347, 352 (D.Hawaii 1973).

The great weight of the policy in favor of discovery in civil rights actions supplements the normal presumption in favor of broad discovery, discussed above. Together, these powerful public policies suggest that the defendants' case for restricted disclosure must be extremely persuasive.

### III. Application of the Balancing Test to these Cases

■ Employing the test just outlined, the result at this stage of the litigation is

quite clear. Disclosure of the police officers' interrogatories in No. CV–87–3317 is appropriate, because the defendants have made neither any substantial showing of harm nor presented any reasons at all, beyond the state privilege statute, why discovery should not be ordered. This analysis suggests that the actual personnel records themselves in No. CV–87–3317 might be directly discoverable, instead of passing through *in camera* review first. But the plaintiff has not appealed that part of the magistrate's order, so this court will not disturb it. The magistrate should, however, apply the balancing test in this opinion to that *in camera* review (if it is still in progress).

In No. CV–87–2359, plaintiffs do appeal the magistrate's order requiring *in camera* review. The magistrate's apparent adherence to the state privilege law would be in error. The case is remanded to the magistrate for proceedings consistent with the procedure and balancing test set forth in this opinion.

Were this case governed purely by the state privilege law, the magistrate's decision in No. CV–87–3317 would still be entirely reasonable. Had the Suffolk County Department of Law investigated the cases construing New York Civil Rights Law § 50–a, it would quickly have found that even New York case law supports Magistrate Jordan's view that the interrogatories posed in No. CV–87–3317 (as distinguished from the document requests) need not be submitted to *in camera* review. In *Matter of Capital Newspapers v. Burns*, 67 N.Y. 2d 562, 505 N.Y.S.2d 576, 496 N.E.2d 665 (Ct.App.1986), the Court of Appeals stated that "the legislative intent underlying the enactment of Civil Rights Law § 50–a was narrowly specific, 'to prevent time-consuming and perhaps vexatious investigation into irrelevant collateral matters in the context of a civil or criminal action.' " *Id.* 505 N.Y.S.2d at 580, 496 N.E.2d at 669 (quoting *Matter of Capital Newspapers v. Burns*, 109 A.D.2d 92, 490 N.Y.S.2d 651, 654 (3d Dept. 1985)). The lower court in *Matter of Capital Newspapers v. Burns* had held that

the statute does not make all personnel records of police officers exempt from disclosure [because the statute] was intended to apply to situations where a party to an underlying criminal or civil action is *seeking documents* in a police officer's file, and was apparently designed to prevent 'fishing expeditions' to find material to use in cross-examination.

*Matter of Capital Newspapers v. Burns*, 109 A.D.2d 92, 490 N.Y.S.2d 651, 654 (3d Dept. 1986) (emphasis added). The state law "did not intend to create a blanket exemption from disclosure," but rather was aimed at "time-consuming" litigation. *Id.* 490 N.Y.S.2d at 654. The Court of Appeals affirmed and adopted this language. *See* 505 N.Y.S.2d at 580, 496 N.E.2d at 669.

At least one federal court has read the term "personnel records" narrowly, lending credence to the view that items not constituting documentary records—such as the officers' own recollections—are also unprotected. In *Marshall v. New York City Transit Authority*, No. 84–CV–1033, slip op. (S.D.N.Y. May 24, 1984), the magistrate made clear that section 50–a's *in camera* procedure for "personnel records" applied only to "personnel" records, not to other kinds of records. Under this reading, *a fortiori*, non-records are not governed by section 50–a. *See also Gannett Co. v. James*, 108 Misc.2d 862, 438 N.Y.S.2d 901 (Sup.Ct. Monroe County 1981), *aff'd*, 86 A.D.2d 744, 447 N.Y.S.2d 781 (4th Dept. 1982) (distinguishing types of records protected by § 50–a).

Finally, even under section 50–a the police department must make a "specific showing of harm" from disclosure before the court can weigh the privilege claim. *See Cincotta v. City of New York*, No. 83–CV–7506, slip op. (S.D.N.Y. Nov. 14, 1984); *Marshall v. New York City Transit Authority*, No. 84–CV–1033, slip op. (S.D. N.Y. May 24, 1984); *Wunsch v. City of Rochester*, 108 Misc.2d 854, 438 N.Y.S.2d 896, 899 (Sup.Ct. Monroe County 1981). Suffolk County has not made any such showing.

## IV. Sanctions

Although no motion for sanctions against defendants has been made by plaintiffs in either of these cases, Rule 11 sanctions against the Suffolk County Department of Law might well be appropriate in No. CV–87–3317. The County Attorney's position in that case is patently untenable as argued. His brief cites no authorities and admits that he found "no statutory or decisional law" interpreting the state statute on this question. Defendants' Objections to Magistrate's Decision and Order, No. CV–87–3317 (E.D.N.Y.), April 18, 1988, at 4. That is apparently because his research was misdirected. Federal Rule of Evidence 501 would have informed defendants' counsel of the application of federal privilege rules to federal civil rights cases. Inquiry into federal privilege cases, or into the cases interpreting Civil Rights Law § 50–a, would have shown that the objections were groundless.

Moreover, this is not the first time that the Suffolk County Department of Law has unreasonably obstructed discovery requests in civil rights actions against its police officers. In *Mercy v. County of Suffolk*, 93 F.R.D. 520 (E.D.N.Y.1982), Judge Pratt rejected the County's assertions of privilege and expressed his disapproval of the County's attitude, writing:

In this court's experience, of the many different police departments who have appeared as defendants, Suffolk County has been one of the most reluctant to cooperate in ... disclosures.... Finally, the court is surprised at defendant Suffolk County's resistance to the disclosure of these documents, since such resistance can only be interpreted as an intent to use artificial, technical objections in order to make the task of a litigating plaintiff in a civil rights suit more difficult.

*Id.* at 523. Judge Pratt went on to suggest that Suffolk County's approach to discovery might be characterized as a disregard for truth and fairness, as well as a waste of its own taxpayers' money. *Id.*

■ Sanctions could be awarded under Rule 11 of the Federal Rules of Civil Procedure, because in No. CV–87–3317 the County made no "reasonable inquiry" into whether its position was "warranted by existing law or a good faith argument for the extension ... of existing law," or under 28 U.S.C. § 1927, which permits the court to shift fees for unreasonable and vexatious multiplication of proceedings. The court declines, however, to impose sanctions. Too free application of sanctions would operate to chill a party's right to appeal magistrates' orders. Moreover, the plaintiff's attorney in No. CV–87–3317 has not been free of some lapses of his own in related civil rights matters. *See Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir.1986).

It would be helpful to all concerned if the parties acted towards each other and the court in a more helpful and professional manner in accordance with the dictates of the Standing Orders of the Court on Effective Discovery in Civil Cases (E.D.N.Y. March 1, 1984; as amended Feb. 27, 1987). Discovery disputes in this district should be resolved by cooperation among attorneys and the magistrate without formal motion and appeal practice. *Id.* If civil rights cases involving the police in Suffolk County cannot be amicably handled in the future, the court will consider appropriate educational programs to assist the attorneys involved in acquiring the appropriate cooperative attitude.

## V. Conclusion

The magistrate's order in No. CV–87–3317 requiring direct disclosure of the police officer's answers to interrogatories about their own recollections is proper. Because the defendants' objections to that order make no showing of specific harm to disclosure, neither the federal balancing test nor the state section 50–a protections are properly invoked. Even if the state "privilege" were operative here, it would be unavailing; the magistrate's reading of the statute to govern only physical documents is reasonable.

The magistrate's order in No. CV–87–3317 requiring *in camera* review of the documentary records has not been appealed from, and thus its validity is not in question.

**198**

The magistrate's order appealed from in No. CV–87–2359 may have been in error. That order may be read as directing *in camera* review of discovery requests pursuant to the state section 50–a procedure.

 In sum, except for reasonable redactions of names and addresses to protect privacy or informer sources, plaintiffs in federal civil rights actions are presumptively entitled to recollections as well as documents on prior complaints and police history. A showing of need must be made by the police before placing the burden of an *in camera* inspection on the magistrate. In the unusual case where a protective order or restrictions on disclosure are sought, a balancing of the interests of the parties and the public will be required. The parties are expected to cooperate in agreeing to redact names and addresses where revelation may interfere with privacy without substantial advantage to the plaintiff. They are also expected to stipulate with respect to appropriate protective orders limiting revelation to counsel or counsel and client.

In view of the large number of these cases, it may be useful for the parties and other interested members of the bar to work out with the magistrates a form of stipulation applicable to most cases. Accordingly, the clerk of the court is directed to send a copy of this opinion to the Nassau County Attorney, the Corporation Counsel of the City of New York, the Nassau and Suffolk Bar Associations and the Bar Association of the City of New York.

For the reasons stated, defendants' objections in No. CV–87–3317 are dismissed. No. CV–87–2359 is remanded to the magistrate for further proceedings consistent with this opinion. No costs or disbursements.

So ordered.