44

LYNDA JONES, Individually and as Administratrix of the Estate of HERBERT W. JONES, JR., Deceased, Respondent, v STATE OF NEW YORK et al., Appellants. (Claim No. 54555.) (Appeal No. 1.)

ELIZABETH M. HARDIE, Individually and as Administratrix of the Estate of ELMER S. HARDIE, Deceased, Respondent, v STATE OF NEW YORK et al., Appellants. (Claim No. 54684.) (Appeal No. 2.)

LYNDA JONES, Individually and as Administratrix of the Estate of HERBERT W. JONES, JR., Deceased, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 54555.) (Appeal No. 3.)

ELIZABETH M. HARDIE, Individually and as Administratrix of the Estate of ELMER S. HARDIE, Deceased, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 54561.) (Appeal No. 3.)

LYNDA JONES, Individually and as Administratrix of the Estate of HERBERT W. JONES, JR., Deceased, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 54555.) (Appeal No. 4.)

ELIZABETH M. HARDIE, Individually and as Administratrix of the Estate of ELMER S. HARDIE, Deceased, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 54684.) (Appeal No. 4.)

ELIZABETH M. HARDIE, Individually and as Administratrix of the Estate of ELMER S. HARDIE, Deceased, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 54684.) (Appeal No. 5.)

Fourth Department, April 7, 1978

APPEARANCES OF COUNSEL

*Louis J. Lefkowitz, Attorney-General (Jeremiah Jochnowitz* and *Ruth Kessler Toch* of counsel), for appellants.

*Cunningham & Pares (William Cunningham* of counsel), for Lynda Jones, respondent.

*Tenney, Smith & Scott* for Elizabeth M. Hardie, respondent.

### OPINION OF THE COURT

MOULE, J.

The State appeals from five orders of the Court of Claims entered in these actions arising from events which took place during the recapture of the Attica Correctional Facility on September 13, 1971. The principal questions raised on these appeals are whether it was proper for the court to order the State to produce statements made by State police and correctional officers to the State Police Bureau of Criminal Investigation following the Attica incident and whether a subpoena duces tecum requiring the presence at trial of approximately 600 State police officers should be quashed.

At an examination before trial held on February 7, 1977 New York State Police Captain Henry F. Williams testified that the State Police possessed certain debriefing statements given by the State police and correctional officers who participated in the retaking of the Attica Correctional Facility. Thereafter, claimants Jones and Hardie moved for production and inspection of a number of items, including these debriefing statements and a report allegedly prepared for former Governor Nelson Rockefeller referred to as the Albright-Vest-

ner Report. Claimants' motion was granted insofar as it related to the statements and report and on July 1, 1977 the State was ordered to provide such information concerning these items as it had available.

Several months later on September 22, 1977, the State made two motions, one in the Jones action and another in the Hardie action, for orders of protection relieving it from compliance with the provisions of the July 1, 1977 order relating to production of the debriefing statements on the ground that these statements had been presented before the First and Second Special Wyoming County Grand Juries investigating the Attica incident and that, therefore, an order of Justice CARMAN F. BALL, the Supreme Court Justice who had impaneled the Grand Juries, was necessary to permit disclosure of this material. The State asserted that it was unaware at the time of the July 1, 1977 order that these statements were part of the Grand Jury papers. On the date that these two motions were argued, October 3, 1977, the court also heard a motion by claimants for an order directing the Attorney-General to show cause why the State should not be held in contempt of court for its failure to comply with the July 1, 1977 order requiring production of the debriefing statements and Albright-Vestner Report. On October 4, 1977, the court denied the State's motions for orders of protection and issued the show cause order requested by claimants. By a subsequent order dated October 12, 1977, the State was held to be in contempt of court for its refusal to obey the July 1, 1977 order; provided, however, that the State could purge itself of the contempt order by producing the debriefing statements and Albright-Vestner Report by the following day. The State filed its notice of appeal from this order of contempt on October 13, 1977, at which time enforcement of the order was automatically stayed (CPLR 5519, subd [a], par 1).

A fourth motion heard by the court on October 3, 1977 concerned an application by the State to quash a subpoena duces tecum requiring the presence at trial of approximately 600 State police officers along with their notes and memoranda. The subpoena was served pursuant to a stipulation by the State that one subpoena served upon the Superintendent of State Police would constitute sufficient service upon all of these officers. The State sought to quash the subpoena on several grounds, among them the fact that necessary witness and mileage fees had not been tendered and that to compel all

of the requested officers to appear at one time would seriously impair police protection. This motion was denied.

A joint trial of these actions and others arising from the Attica incident commenced on October 17, 1977, at which time the State moved to quash two subpoenas duces tecum which required, among other things, the production of the State police and correctional officers' debriefing statements. One subpoena had been served upon Major Daniel A. Dakin, custodian of the records for the State Police, and was returnable October 17, 1977; another had been served upon State Police Lieutenant Gerald O'Grady, the State Police photographer, and was returnable the following day. The State claimed, inter alia, that the necessary witness and mileage fees had not been tendered, and that production of the debriefing statements at trial was prevented by the automatic stays effected by the appeals taken by the State from the prior orders of the court. The court denied the State's motion to quash these two subpoenas but, in so doing, held that tender of witness and mileage fees was required in advance of the witnesses' testimony. Inasmuch as Major Daken was present, the court allowed claimants to cure the deficiency by paying him the fees before calling him to the stand. Lieutenant O'Grady has not yet been called as a witness.*

The State first contends that the court erred in ordering production of the debriefing statements of the State police and correctional officers and the Albright-Vestner Report, inasmuch as these items were exhibits before the Special Wyoming County Grand Juries. We disagree.

█ Despite the fact that as early as July 20, 1977, the State had been put on notice of the possibility that the debriefing statements and report had been presented in evidence before the Wyoming County Grand Juries, the State neither took a timely appeal from the July 1, 1977 order requiring their production nor did it move for a rehearing of the motion which culminated in that order. Nevertheless, even if the State had taken a timely appeal from this order, or if we were

---

* Following the testimony of Major Daken, trial was adjourned until October 18, 1977. Apparently, it was at about this point in the trial that the State brought a proceeding in this court under CPLR article 78, to prohibit the Court of Claims from proceeding further in requiring production of the debriefing statements. We denied the State's petition on the ground that this court was not a proper forum for an original proceeding brought to prohibit a Court of Claims Judge from exceeding his authority (Matter of People v Quigley, 59 AD2d 825).

to treat the State's motions for protection orders as motions to renew based upon facts discovered after the granting of the July 1, 1977 order (see *Soffair v Koffler,* 29 AD2d 659, app dsmd 23 NY2d 897), we would hold that production of the statements and report was properly ordered.

In *People v Di Napoli* (27 NY2d 229, 235), the Court of Appeals set forth five general purposes to be served by maintaining Grand Jury secrecy which are to be considered in determining whether disclosure of Grand Jury material is warranted: "(1) prevention of flight by a defendant who is about to be indicted; (2) protection of the grand jurors from interference from those under investigation; (3) prevention of subornation of perjury and tampering with prospective witnesses at the trial to be held as a result of any indictment the grand jury returns; (4) protection of an innocent accused from unfounded accusations if in fact no indictment is returned; and (5) assurance to prospective witnesses that their testimony will be kept secret so that they will be willing to testify freely." (See *Matter of Corporation Counsel of City of Buffalo [Cosgrove],* 61 AD2d 32; *Matter of City of Buffalo [Cosgrove],* 57 AD2d 47; *Matter of Scotti,* 53 AD2d 282.) While the reasons for maintaining Grand Jury secrecy are cogent in circumstances where disclosure of Grand Jury *testimony* is sought (e.g., *Matter of Corporation Counsel of City of Buffalo [Cosgrove], supra),* these reasons are inapplicable here. There is nothing in the record to indicate either that the debriefing statements were made or that the Albright-Vestner Report was prepared for the Special Grand Juries conducting the Attica investigation. Rather, they appear to have been generated independently of the Grand Juries. The statements and report were merely exhibits before them, and the record shows that copies of these statements and the report exist. Furthermore, the Special Grand Juries investigating the Attica incident have long since been disbanded (see *Matter of Scotti, supra),* and all indictments arising therefrom have been dismissed (cf. *Matter of Corporation Counsel of City of Buffalo [Cosgrove], supra).* Under these circumstances, the purposes for Grand Jury secrecy are not defeated by disclosure of these Grand Jury exhibits.

The record shows that claimants made an application to Supreme Court Justice BALL, who had impaneled the Special Grand Juries, for disclosure of the debriefing statements prior to seeking an order of contempt against the State in these

actions. It appears that claimants were advised to proceed in accordance with the existing July 1, 1977 order of the Court of Claims. On December 22, 1977, however, Justice BALL released any Grand Jury exhibit, exclusive of Grand Jury testimony concerning it, which was ordered produced in any court action. Therefore, the Court of Claims properly denied the State's motions for orders of protection, and the State's failure to comply with the order of July 1, 1977 constituted contempt. However, we modify the order of contempt to provide that the State may purge itself thereof by producing the debriefing statements and Albright-Vestner Report within 10 days of the entry of the order upon this opinion.

The State contends secondly that the subpoena served on the Superintendent of State Police, which required the attendance at trial of over 600 State police officers, should be quashed. More particularly, the State argues that the acceptance of service of a subpoena by the Superintendent of State Police for the State police officers did not constitute a waiver of advance payment of required witness fees to those officers and that the subpoenaing of over 600 State police officers to appear in court on the same day was unnecessary and destructive of State Police protection.

■ At oral argument it was learned that claimants have already had an opportunity to view the debriefing statements made by the State police and correctional officers. Claimants asserted that this circumstance will allow them to reduce substantially the number of State police officers whom they will call as witnesses. They further asserted that upon a complete examination of the debriefing statements, an even further reduction in the number of officers to be called to the stand may be possible. In view of these assertions, the subpoena for the appearance of all of the approximately 600 State police officers should be quashed. Claimants may subsequently serve subpoenas upon such witnesses as are necessary for the trial of these actions, in accordance with provisions of the CPLR, including those concerning payment of witness and mileage fees (CPLR 2303, 8001). The record shows that the State was ordered on June 28, 1976 to furnish claimants with the names and addresses of known witnesses to the Attica uprising and retaking, but that it has not yet complied with this order. Should these addresses be necessary in order for claimants to serve subpoenas on prospective witnesses, claimants may enforce the order. In the event that other lawful

methods of service of subpoenas upon the officers prove to be impractical, the trial court may provide for a suitable manner of service (CPLR 308, subd 5; 2303).

■ Finally, in light of our determination that the court properly ordered production of the State police and correctional officers' debriefing statements, we conclude that the order denying the State's motion to quash the subpoenas served on Major Daken and Lieutenant O'Grady should be affirmed.

Marsh, P. J., Cardamone, Simons and Dillon, JJ., concur.

Appeal No. 1.—Order unanimously affirmed, without costs.

Appeal No. 2.—Order unanimously affirmed, without costs.

Appeal No. 3.—Order unanimously reversed, without costs, and motion granted.

Appeal No. 4.—Order unanimously modified in accordance with same opinion as in Jones v State (Appeal No. 1) decided herewith, and, as modified, affirmed, without costs.

Appeal No. 5.—Order unanimously affirmed, without costs.