James **MONTALVO**, Plaintiff,

v.

Police Officers Kenneth **HUTCHINSON**, Calvin **McArthur** and Robert **Riello**; New York City Police Department, 26th Police Station, Defendants.

No. 90 Civ. 0299 (VLB).

United States District Court, S.D. New York.

Nov. 22, 1993.

Joseph P. Zammit, Fulbright & Jaworski, New York City, for plaintiff.

Paul Aronson, Asst. Corp. Counsel, New York City, for defendants.

VINCENT L. BRODERICK, District Judge.

## I

This challenge to discovery rulings of a United States Magistrate Judge presents questions of the role of the courts in protecting both rights of plaintiffs in police misconduct cases to obtain discovery necessary to pursuit of their claims, and the interests of the public and police departments in avoiding unnecessary interference with legitimate police operations. Neither interest can be sacrificed to the other.

Fairness and effectiveness in law enforcement are interdependent. The watchers— the police who monitor and seek to prevent crime—must themselves be watched. At the same time police agencies must be able to perform their functions. This combination of necessities is reflected at its highest level in the objective of "domestic Tranquillity" set forth in the Preamble to the Constitution of the United States, conjoined with the due process mandates of the Fifth and Fourteenth Amendments, implemented by 42 U.S.C. § 1983 and other statutes.

## II

Discovery is both a tool for achieving justice and a weapon. Its necessity and its risks, leading to appropriate limitations on potential abuse, each require full recognition. These aspects must be reconciled in the current case in the context of charges of police misconduct, necessitating sensitivity to the need to protect the public against both crime and police misbehavior.

The Federal Rules of Civil Procedure, adopted in 1938, explicitly recognized the importance of discovery where necessary to obtain critical information needed for trial.

Its broad scope under Fed.R.Civ.P. 26(b) includes "information ... reasonably calculated to lead to the discovery of admissible evidence." Despite numerous efforts to limit the scope of this provision, it has never been narrowed, nor do the proposed 1993 amendments to the Rule do so. Discovery is a particularly critical means of securing justice when information is exclusively in the hands of an adversary, as is often where police misconduct is alleged.

Fed.R.Civ.P. 26(b) is balanced by Fed. R.Civ.P. 26(c), which permits orders "to protect a party or person from ... undue burden," and provides wide latitude in the means selected to achieve that goal. Police activities are by nature burdened if those in conflict with the police have unlimited access to personnel records, Grand Jury minutes and other confidential information merely because a lawsuit is filed which can survive the relatively low threshold of stating a claim under Fed.R.Civ.P. 12(b)(6).

■ *In camera* inspection to determine relevancy and importance of documents sought is one way of reconciling these interests, depending on the nature of the issues and material sought. The usefulness of materials sought "may not be as apparent to the impartial presiding judge as to single-minded counsel ... the latter is in a far better position to appraise the value" of particular items. *People v. Rosario,* 9 N.Y.2d 286, 290, 213 N.Y.S.2d 448, 451, 173 N.E.2d 881, 883 (1961).

That interest, however, must be balanced against the harm threatened by wholesale discovery of police personnel records and Grand Jury material; a partial synthesis may be attempted by permitting counsel to describe the kind of item claimed to be relevant. Such a description can be utilized in other contexts where further disclosure is sought, for example, in determining whether further discovery is needed before a motion for summary judgment can be granted. See Fed.R.Civ.P. 56(f).

### III

Plaintiff, who has alleged police misconduct and brought this case under 42 U.S.C. § 1983, objects to several discovery rulings of United States Magistrate Judge Sharon E. Grubin. The Magistrate Judge did not bar plaintiff from securing the information sought through detailed supported requests, or based upon her *in camera* evaluation of the extent of its relevance, but rejected the blanket nature of the requests which are the subject of the objections before me.

I overrule each of the objections. I find no grounds for concluding that the Magistrate Judge acted contrary to law or that her rulings were clearly erroneous, in significant part because she only barred use of arguably overbroad demands on the part of plaintiff; viable avenues remain open to plaintiff to secure information which meets the criteria of Fed.R.Civ.P. 26.

### IV

■ Parties in litigation are entitled to determine what positions they wish to take, and to insist on rulings on issues in the form they wish to present them. This function of the Bar must be free of judicial discouragement or interference in order for the access to the courts protected by the First Amendment to be realized.

■ When unrealistic positions are taken, however, the court may find it necessary to deny applications in the form presented. This may be necessary where partially meritorious requests are asserted in a form which unduly trenches upon competing interests. Courts may and should, moreover, encourage collegial efforts by opposing counsel to agree on measures which will protect the most important interests of contending parties.

The positions of both parties in the present instances are sweeping in nature, suggestive of absence of the kind of mutual cooperation in resolving discovery disputes by providing truly important information voluntarily while avoiding unnecessary difficulties. These are also goals sought to be encouraged by the Judicial Improvements Act of 1990, Public Law 101–650, 104 Stat. 5089, enacting 28 U.S.C. § 473, and by the proposed 1993 amendments to Fed.R.Civ.P. 1, sentence 2, which call for the "administration" as well as the former "construction" of the Rules "to

secure the just, speedy, and inexpensive determination of every action."

I expect counsel for each of the parties to discuss further the problems presented by the current objections and other discovery issues with the objective of seeking to resolve them without further litigation if possible.

## V

■■ Plaintiff seeks "all [state court] Grand Jury testimony currently in the possession of defendants' counsel." Plaintiff asserts these are relevant and important because defendants are parties to the case, and that production is fair and also not a breach of Grand Jury secrecy where the Corporation Counsel already has the documents. These arguments are not conclusive, because Grand Jury minutes can only be obtained by a private party based on a showing of need. See generally *Douglas Oil Co. v. Petrol Stops,* 441 U.S. 211, 221, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979). Routine production of such minutes upon mere request supported only by the identity of the parties is contrary to long-standing public policy. To grant requests without a further showing would erode confidence in the confidentiality of Grand Jury testimony, contrary to Fed. R.Cr.P. 6.

Plaintiff stresses that Corporation Counsel already has, on whatever basis, the minutes sought.[1] Basing production or nonproduction on complex tracing of when, how and why minutes were furnished to various categories of public sector counsel is, however, not the optimal first resort in seeking to deal with situations of this nature. See generally *DiLeo v. Commissioner,* 959 F.2d 16 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 197, 121 L.Ed.2d 140 (1992).

Defendants argue in general terms that the showing of need must be pinpointed and highly specific with respect to particular testimony. The problem with this position is the catch–22 involved: it is difficult to specify what portions of a document may be crucial if the document is withheld from perusal. It would be unreasonable to demand extremely detailed specificity from one restricted by ignorance.

An appropriate solution to this dilemma, left open by the Magistrate Judge's ruling, would be for plaintiff to request an *in camera* inspection to determine if the Grand Jury minutes contain material important to the prosecution of plaintiff's claim. See *United States v. Zolin,* 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989). I have every confidence that the Magistrate Judge would consider a request for such inspection on her part or through submission of the documents to me.

In weighing the importance of the content of the minutes against the interests supporting secrecy, the decisionmaker may appropriately consider the age of the minutes, the absence of concrete suggestions of prejudice by the defendants, and the limited character of the disclosure of only official witnesses before the Grand Jury. To assist the *in camera* analysis of the minutes, plaintiff might choose to furnish to the court and defense counsel a description of types of information which may be in the minutes and which plaintiff contends would materially assist plaintiff's presentation.

## VI

■■ Plaintiff also seeks personnel files including pre-employment information and individual complaints involving the defendant officers "regardless of date." Plaintiff is correct that such material might have relevance to reasons for or likelihood of subsequent

---

1. It appears clear that Corporation Counsel does not intend to use them at trial. Conceivably but not necessarily, having but not using such minutes could furnish some speculative marginal advantage to defense counsel as providing clues to what actually happened in connection with the incident at issue. The Magistrate Judge has found that Corporation Counsel personnel have not read the minutes. Plaintiff's counsel has referred to what appears to be an off-record conversation with a member of the Corporation Counsel's office indicating to plaintiff's counsel that a member of that office did see the minutes. Utilizing information of this type would have an unfortunate chilling effect on informal discussions between opposing counsel, each of whom would have to keep careful notes or have third party witnesses present to prevent misunderstanding or misquotation. See *Schueler v. Roman Asphalt,* 827 F.Supp. 247 (S.D.N.Y.1993).

problems of the type at stake in the present case.

Under New York Civil Rights Law § 50–a, however, such records can only be released after judicial review. Defendants assert through a responsible officer that production of such files can be detrimental to the Police Department. See *King v. Conde*, 121 F.R.D. 180 (E.D.N.Y.1988). This concern must be taken into account, since an open season for anyone bringing a lawsuit to probe into the entire life history of any member of the department, would quite likely have a chilling effect on recruitment as well as a harmful effect to departmental morale.

In addition, routine availability of internal personnel records to adversaries without detailed analysis of need would be likely to lead to distortion of the accuracy of such records. Such distortion is inevitable in any event, since a written record of a problem situation may haunt an employee in an organization for an entire lifetime, whereas oral counselling leaves no such paper trail or computer equivalent and may better promote improvement of performance. Excessive reliance on paperwork and formal measuring devices tends to lead to "delusive exactness," a term coined by Justice Holmes, dissenting in *Truax v. Corrigan*, 257 U.S. 312, 343, 42 S.Ct. 124, 133, 66 L.Ed. 254 (1921).

· Use of formal procedures, while encouraged by the legal system in various ways, is not ordinarily mandatory for most purposes; subjective nonwritten evaluations are acceptable subject to the same standards as written ones. See *Watson v. Ft. Worth Bank & Trust Co.*, 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988); Mertens, *"Watson v. Fort Worth Bank & Trust,"* 14 Employee Rel.L.J. No. 2 at 165 (Fall 1988). If the likelihood of routine disclosures to adversaries becomes substantial, more employers in high-litigation areas of work may elect to limit use of records of the types likely to be requested.

Risks of distortion of employment-related documents and records acquire enhanced importance as their use—and potential abuse—becomes more significant. See *NLRB v. Magnetics International*, 699 F.2d 806, 807 (6th Cir.1983); Fasman, "Legal Obstacles to Alternative Workplace Designs," 8 Employee Rel.L.J. 256 (1982); Symposium, 8 Employee Rel.L.J. 572 (1983).

Because of these important interests on both sides of such matters, revelation of such files to adversaries should be granted where but only where found by an impartial reviewer to be likely to affect the outcome of the litigation. See *United States v. Marashi*, 913 F.2d 724, 732 (9th Cir.1990); *Miller v. Pancucci*, 141 F.R.D. 292 (C.D.Cal.1992).

In order to determine the significance or insignificance of portions of such material to the litigation, *in camera* examination may be appropriate. *Kerr v. United States District Court*, 426 U.S. 394, 406, 96 S.Ct. 2119, 2125, 48 L.Ed.2d 725 (1975). It appears that the Magistrate Judge offered this option, that it was rejected by plaintiff, and the option then withdrawn because of the rejection.

Plaintiff points out that negligent recruitment may be a basis of liability. There is no preliminary showing here, however, that improper police recruitment methods may have been used, or that a more foolproof method of recruitment has been devised than the one employed. An analysis of overall procedures or invasions of privacy in each individual case of alleged police misconduct would call for repetitive open-ended investigations with dubious benefits to proper adjudication of cases, which must be based primarily on the actual incidents in dispute. See *210 East 86th St. Corp. v. Combustion Engineering*, 821 F.Supp. 125, 129–30 (S.D.N.Y.1993).

On the other hand, *in camera* examination of the documents may disclose facts suggesting municipal liability even if there were to be no individual personal liability. See *Allen v. City of Yonkers*, 803 F.Supp. 679 (S.D.N.Y. 1992).

I have every confidence that were plaintiff's counsel to determine on further reflection or based on my rulings in this memorandum order that *in camera* inspection of these items would be appropriate, the Magistrate Judge would consider such a request for such inspection on her part or through submission of the documents to me.

## VII

█ In an effort to narrow the scope of potential future disclosure were it to be found appropriate, defendants argue that files concerning occurrences subsequent to the incident on which this lawsuit is based are inherently irrelevant and should not be produced. The Magistrate Judge did not so hold. I decline to do so.

Events after a disputed incident often shed light both on the intent of participants, and on institutional or individual patterns of behavior. Depending on the precise circumstances involved, such post-incident occurrences can be highly relevant. See *United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir.1990); *Eatz v. DME Unit of Local Union No. 3*, 794 F.2d 29 (2d Cir.1986); compare also Fed.R.Evid. 404(b).

## VIII

█ A further controversy has been raised with regard to an indication in the Magistrate Judge's written ruling regarded as suggesting by implication that plaintiff's counsel failed to follow a local rule relating to motions, and any future violation would result in sanctions. The local rule violated is not specified, as would be necessary were an actual finding of violation made; it may well have related to timeliness and other requirements for applications for reconsideration under Local Civil Rule 3(j).

Counsel often rightly pride themselves on being willing to take risks in the course of representation of a client—*pro bono* or otherwise—when they believe they are right. See Landsman, "The Rise of the Contentious Spirit: Adversary Procedure in Eighteenth Century England," 75 Cornell L.Rev. No. 3 at 497 (Mar. 1990). It would be contrary to the long-term interests of justice to chill courageous advocacy. See Fales, *Introduction to Will the ABA Draft Model Rules of Professional Conduct Change the Concept of the Lawyer's Role?* (Ass'n Bar City of NY 1981); Pillsbury, "The Legal Relations Between Bench and Bar," 32 Amer.L.Rev. [later U.Pa.L.Rev.] 161, 183 (Mar.–Apr.1898); Shawcross, "Functions and Responsibilities of an Advocate," 13 Record Ass'n Bar City NY 483 (1958).

Moreover, special solicitude is important in protecting counsel who represent unpopular or impecunious clients from unjustified adverse consequences of their representation. See *D'Souza v. Howell*, 794 F.Supp. 517, 519 & n. 4 (S.D.N.Y.1992).

At the same time, the courageous attitude called for by legal professionalism calls for recognition of the appropriateness of robust debate on the part of all participants when they find it justified. In a real sense, litigating lawyers as well as jurists are public figures. See generally *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Criticism is part of the warp and woof of the legal profession, as in many other areas of activity involving contention;[2] side adjudication relating to everything expressed would lead to endless mezzanine litigation. Unless actual consequences flow from them,[3] adjudication of the correctness of comments included in a memorandum issued by the Magistrate Judge would be contrary to the objectives laid down in Fed. R.Civ.P. 1, sentence 2 (the "just, speedy and inexpensive determination of every action"). See *Doe v. United States*, 821 F.2d 694 (D.C.Cir.1987) (R. Ginsburg, J.).

█ Procedural rules are often the subject of disagreement between jurists as well as lawyers, and no stigma is or should be associated with possible infractions of them unless of a deliberate and harmful nature. The concept of harmless error (Fed.R.Civ.P. 61) is applicable to such infractions, which are frequently found and lead to consequences only where harm to the adversary justifies corrective action. See *Gallagher v. Donald*, 803 F.Supp. 899 (S.D.N.Y.1992) (documents involved in removal procedure); *Thomas v. Yonkers Police Dept.*, 147 F.R.D. 77 (S.D.N.Y.1993) (additional locally required

---

**2.** See Committee on Labor Law, Federal Bar Council, "Problems of Defamation and Freedom of Expression in Labor Relations," 115 Cong. Rec. S6318 (daily ed. June 12, 1969), 23 Industrial & Labor Rel.Rev. 101 (Oct. 1969).

**3.** See *Tetenes v. County of Rockland*, 146 F.R.D. 82 (S.D.N.Y.1993).

service of process where actual notice received); Eliot, "Inefficiency in the Administration of Justice," 49 Amer.L.Rev. 171, 185–94 (1915); Taft, "The Delays of the Law," 18 Yale L.J. 28, 35 (1908); Elihu Root, "Scandal of the Law's Delays," Address of Aug. 19, 1915, reprinted in E. Root, *Addresses on Government and Citizenship* 177, 181 (1916); see also Moore, "Avoidable Delays in the Trial Courts," 18 Yale L.J. 112, 117 (Nov. 1908).

No sanction other than the comment itself was imposed by the Magistrate Judge, nor was any attorney mentioned by name; the Magistrate Judge's ruling was not published as are some reprimands where utilized as sanctions. See *Roberts v. Lyons,* 131 F.R.D. 75 (E.D.Pa.1990).

I treat the Magistrate Judge's statement regarding local motion rules as an expression of a view that an infraction occurred, which will doubtless be helpful to counsel in avoiding potential infractions in the future, but not as a ruling or reprimand.

The challenged statement concerning the local Civil Rules with respect to motions was not an order, and thus not subject to reconsideration under 28 U.S.C. § 636(b)(1)(A). In their reviewing capacity, applicable to my consideration of objections to here, courts review operational judgments or orders, "not statements in opinions," *Black v. Cutter Laboratories,* 351 U.S. 292, 297, 76 S.Ct. 824, 8, 100 L.Ed. 1188 (1956); *California v. Rooney,* 483 U.S. 307, 107 S.Ct. 2852, 97 L.Ed.2d 258 (1987).

Plaintiff's counsel's reputation should not, and I have every confidence will not be adversely affected. I also have every confidence that the Magistrate Judge would not impose actual sanctions, notwithstanding the warning, unless a substantial or clearly deliberate violation of one or more rules occurred.

SO ORDERED.