Joan RUTHER, Plaintiff,

v.

Robert BOYLE, individually and as a police officer of the Greenport Village Police Dept.; Detective Sergeant SHOTT, individually and as a Detective of the Greenport Village Police Dept.; and the Village of Greenport, Defendants.

No. CV 93–2244 (ADS).

United States District Court, E.D. New York.

Jan. 30, 1995.

Arthur V. Graseck, Jr., Port Washington, NY, for plaintiff.

Thurm & Heller, New York City by Richard S. Sklarin, of counsel, James M. Catterson, Jr., Dist. Atty. of Suffolk County, Riverhead, NY by Barbara D. Rose, Asst. Dist. Atty., for defendants.

## MEMORANDUM AND ORDER

SPATT, District Judge:

The plaintiff Joan Ruther ("Ruther") moves for an order compelling the District Attorney of Suffolk County ("District Attorney") to produce to the Court, for *in camera* inspection, documents in the District Attorney's possession related to (1) the District Attorney's investigation into the plaintiff's arrest, and (2) the District Attorney's investigation into alleged abuses by the Village police. The plaintiff wants the documents to be made available for discovery and inspection by her, subject to any appropriate protective order. The defendants and the District Attorney's office oppose the motion.

## BACKGROUND AND COMPLAINT

The plaintiff has brought an action pursuant to 42 U.S.C. § 1983, alleging an unlawful arrest and use of excessive force by the defendant officers. Ruther also alleges a claim under *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) against the Village of Greenport ("Village" or "Greenport"), on the ground that the officers' actions were part of an institutionalized practice of the Village police, which the Village condoned.

On the morning of May 14, 1993 the plaintiff alleges she was picketing approximately 90 feet away from the Village Court in Greenport. The picketing allegedly stemmed from difficulties Ruther's daughter had been encountering as a result of termi-

nating an intimate relationship with a Village Police Officer, Eric Heins.

According to Ruther, while she was picketing the defendant officer Robert Boyle ("Boyle") approached her, attempted to grab the sign she was carrying, and declared that she was under arrest. Boyle allegedly ordered Ruther to accompany him to the courthouse. Ruther further alleges that the defendant Sergeant Shott ("Shott") then appeared on the scene, grabbed her picket sign and ripped it apart.

According to Ruther, as Shott ripped her sign Boyle grabbed her, threw her on the hood of a nearby car and handcuffed her behind her back. Because of the force used by Boyle, the plaintiff alleges her feet were elevated off the ground and her chest and face struck the hood. Ruther alleges that she was detained for approximately 90 minutes in the courthouse, as the defendants unsuccessfully searched for an offense with which to charge her.

As a result of the police officer's actions, Ruther alleges that she sustained physical injuries to, among other places, her lower back, neck, and head. The plaintiff contends that she was arrested without probable cause, that Boyle and Shott used excessive force against her, and that the officer's actions were calculated to deprive her of her right to exercise free speech.

Ruther also alleges in her complaint that the officer's misconduct was part of an institutionalized practice of the Village police, which was tolerated and approved of by the Village. According to Ruther, despite knowing of the officers' misconduct the Village failed to take any effective action to prevent Boyle and Shott, and other officers, from engaging in such acts of misconduct. In support of this allegation, Ruther claims that the Village failed (1) to properly discipline and control Boyle and Shott and other officers known for dealing irresponsibly with citizens, (2) to take adequate precautions in hiring and training officers, (3) to forward evidence of criminal conduct by Village police officers to the District Attorney's office, and (4) to establish a *bona fide* system for dealing with complaints of police misconduct. Ruther also claims that the Village established a bogus investigation apparatus for investigating police misconduct, which was calculated to deceive the public and allow the police to continue their misconduct.

The plaintiff contends that the defendants' conduct violated her rights under the First, Fourth and Fourteenth Amendments to the United States Constitution, including her rights to equal protection, procedural and substantive due process. Ruther demands compensatory and punitive damages.

## PRESENT MOTION

The plaintiff moves pursuant to Fed. R.Civ.P. 26 and Fed.R.Civ.P. 34 for an order compelling the District Attorney's office to produce to the Court, for *in camera* inspection, "all documents" in the possession of the District Attorney's office related to its investigation of the incidents surrounding the plaintiff's May 14, 1993 arrest and detention, as well as its investigation of the Greenport Police Department.

The plaintiff contends that the District Attorney's office has been investigating the Greenport Police Department with respect to the type of institutional misconduct alleged in the complaint. Indeed, the plaintiff contends that in October, 1994 a report resulting from a Grand Jury investigation of the Greenport Police Department was released in its entirety by the District Attorney's office. According to Ruther, the report refers to, among other officers, the defendant Shott and Officer Heins, the officer plaintiff's daughter had a relationship with. Ruther contends that the issue of the Village's condonation of the defendant officers' misconduct is of "central importance" to this case, and that the District Attorney's investigation files on the Greenport Police Department must be discovered and inspected because they contain material relevant to her *Monell* claim against the Village.

The plaintiff agrees that upon an *in camera* review of these documents by the Court, irrelevant or sensitive material may be redacted, and any material information disclosed to the plaintiff can be subject to an appropriate protective order.

The defendants oppose the motion, on the ground that it is overly broad. According to the defendants, the plaintiff's request for "all the documents" in the possession of the District Attorney related to the Greenport Police Department does not set any parameters regarding the documents she seeks. In the defendants' view, requiring the District Attorney's office to produce every document it has generated relating to the Greenport Police Department would be tantamount to an unbridled fishing expedition.

Although not a party to this case, the District Attorney has also submitted papers in opposition to the plaintiff's motion. Essentially, the District Attorney contends that he should not be compelled to disclose the proceedings of the grand jury investigation of the Greenport Police Department, because (1) as a matter of comity the plaintiff should first make her application for disclosure of the grand jury proceedings to the state court that supervised the grand jury investigating the Greenport Police Department, pursuant to New York Criminal Procedure Law ("CPL") § 190.25, and (2) the plaintiff has failed to established a "particularized need" for the proceedings.

## DISCUSSION

At the outset, the Court notes that the plaintiff's discovery request entails different kinds of documents, some of which may not involve grand jury material. In the Court's view, the plaintiff's demand covers two categories of documents regarding the Greenport Police Department: (1) documents and material gathered in the course of the grand jury's investigation of the Greenport Police Department, (2) documents in the possession of the District Attorney's office related to its investigation of the Greenport Police Department that were not created for or presented to the grand jury.

The parties fail to recognize the different categories of documents sought, and proceed as if only one category of documents is at issue. Thus, the plaintiff fails to account for grand jury material in her demand, and contends that the applicable legal standard for all the documents she seeks is the one governing discovery of privileged police records. The District Attorney, on the other hand,

focus solely on the discovery of grand jury documents, and contends that the applicable legal standard for all the documents sought by the plaintiff is the one governing disclosure of grand jury material.

Different legal standards, however, govern disclosure of the two categories of privileged materials sought by the plaintiff. Thus, to the extent the documents sought are not grand jury material, the arguments of the District Attorney's office are inapplicable. Likewise, to the extent the documents are grand jury material, the plaintiff's arguments are inapplicable.

The Court also notes that federal law, and not state law, governs the scope of the privileges contested in this case. *See von Bulow v. von Bulow,* 811 F.2d 136, 141 (2d Cir.1987) (citing Fed.R.Evid. 501); *Lucas v. Turner,* 725 F.2d 1095, 1099 (7th Cir.1984); *King v. Conde,* 121 F.R.D. 180, 187 (E.D.N.Y.1988) (collecting cases).

■ Because no federal rule expressly governs the privileges asserted here, courts have fashioned balancing tests whereby the interests favoring disclosure and the interests favoring confidentiality under the privilege asserted are weighed. Moreover, while state law does not govern the scope of the privilege it may, where appropriate, supply a rule of decision or illustrate an important state policy to be considered by the judge weighing the competing interests. *See Conde,* 121 F.R.D. at 187.

### 1. Disclosure of Grand Jury Material.

In discussing the history of the grand jury system, the Second Circuit has explained that secrecy in grand jury proceedings is indispensable to their proper functioning:

As this institution evolved over the centuries, its proceedings were cloaked with secrecy to guard against injury to reputations of the innocent to protect witnesses from retaliation or intimidation, and to promote the grand jury's effectiveness as an investigative device. This time honored policy of secrecy has been the most essential, indeed indispensable, characteristic of grand jury proceedings.

*In re Grand Jury Investigation of Cuisinarts, Inc.,* 665 F.2d 24, 28 (2d Cir.1981), *cert. denied,* 460 U.S. 1068, 103 S.Ct. 1520, 75 L.Ed.2d 945 (1983). *See also Douglas Oil Co. of California v. Petrol Stops Northwest,* 441 U.S. 211, 218–19 & n. 9, 99 S.Ct. 1667, 1672–23 & n. 9, 60 L.Ed.2d 156 (1979) ("[T]he proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."); *Lucas,* 725 F.2d at 1099; *accord In re District Attorney of Suffolk County,* 58 N.Y.2d 436, 442–43, 461 N.Y.S.2d 773, 776, 448 N.E.2d 440, 443 (1983).

Because of the "time honored" policy and strong public interest in maintaining grand jury secrecy, the United States Supreme Court, as well as the New York State Court of Appeals, has consistently held that a strong showing of "particularized need" is required before any grand jury materials can be disclosed. *See, e.g., United States v. Sells Engineering, Inc.,* 463 U.S. 418, 443, 103 S.Ct. 3133, 3148, 77 L.Ed.2d 743 (1983); *Douglas Oil,* 441 U.S. at 222, 99 S.Ct. at 1674. *See also District Attorney of Suffolk County,* 58 N.Y.2d at 444, 461 N.Y.S.2d at 777, 448 N.E.2d at 444 (one seeking disclosure of grand jury proceedings "first must demonstrate a compelling and particularized need for access.").

In *Douglas Oil,* the Supreme Court specified that the particularized need standard requires the party seeking grand jury material must show (1) that the material they seek is needed to avoid a possible injustice in another judicial proceeding, (2) that the need for disclosure is greater than the need for continued secrecy, and (3) that the request is structured to cover only material so needed. *Id.,* 441 U.S. at 222, 99 S.Ct. at 1674; *Cullen v. Margiotta,* 811 F.2d 698, 715 (2d Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). The *Douglas Oil* court went on to emphasize the limited nature of such disclosure, and the balance of interests a court must consider:

> [D]isclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and the burden of demonstrating this balance rests upon the private party seeking disclosure.... In sum ... the court's duty in a case of this kind is to weigh carefully the competing interests in light of the relevant circumstances and the standards announced by this Court. And if disclosure is ordered, the court may include protective limitations on the use of the disclosed material[.]

441 U.S. at 223, 99 S.Ct. at 1675. *See also Lucas,* 725 F.2d at 1102–1108 (applying *Douglas Oil* and balancing competing interests in a section 1983 case against corrections officers, where the plaintiff sought discovery of grand jury proceedings investigating the corrections officers).

Likewise, under New York law, upon a showing of a compelling and particularized need for the grand jury material, the court must then balance the public interest in disclosure against the public interest favoring secrecy. Only when the former outweighs the latter is disclosure appropriate. · *District Attorney of Suffolk County,* 58 N.Y.2d at 444–45, 461 N.Y.S.2d at 776–77, 448 N.E.2d at 443–44.

■ However, before considering whether the plaintiff has made the necessary showing of a particularized need for the material she has demanded, and weighing the balance of competing interests, the Court believes that as a matter of comity the plaintiff should be directed to first make her application to the state court supervising the grand jury at issue. *See Douglas Oil,* 441 U.S. at 224–230, 99 S.Ct. at 1675–78 ("[I]n general, requests for disclosure of grand jury transcripts should be directed to the court that supervised the grand jury's activities."); *Lucas,* 725 F.2d at 1099 (requiring in a section 1983 action that, as a matter of comity and to prevent serious weakening of the state's control over the secrecy of grand juries, the federal courts defer action on any grand jury disclosure until the party seeking disclosure shows that the state court supervising the grand jury has considered the request and ruled on the continuing need for secrecy); *cf. Conde,* 121 F.R.D. at 187 ("[A] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal sub-

stantive and procedural policy.") (citations omitted).

New York courts follow a similar procedure with respect to requests for the disclosure of grand jury material. *See* CPL § 190.25(4) (grand jury material may not be disclosed except by order of the court); *State v. Quigley*, 59 A.D.2d 825, 399 N.Y.S.2d 734, 735 (4th Dept.1977) (disclosure under CPL § 190.25 requires an order of the court in charge of the grand jury).

Accordingly, the plaintiff must first make her request for documents that are a part of any grand jury proceedings to the state court supervising the grand jury. If after reviewing the plaintiff's application, the state court supervising the grand jury decides that secrecy of the grand jury proceedings is still warranted, then the plaintiff may challenge the state court's decision before this Court. *Lucas*, 725 F.2d at 1099. This Court shall then determine whether the plaintiff has made a showing of particularized need for the material, and if so; whether the need outweighs the secrecy considerations articulated by the state court. *Id. See also Douglas Oil*, 441 U.S. at 226, 230–31, 99 S.Ct. at 1676, 1678–79 (where court supervising grand jury cannot weigh in an informed manner, due to lack of familiarity with the civil case, the need for disclosure against the need for secrecy, the better practice is that the court where the civil case is pending should weigh the balance of interests upon being informed of the grand jury court's reasons for maintaining secrecy). Any review of the grand jury materials that may be disclosed can be conducted *in camera* by the Court, and if disclosure is warranted the material can be subject to an appropriate protective order. *See, e.g., Montalvo v. Hutchinson*, 837 F.Supp. 576, 579 (S.D.N.Y.1993); *Conde*, 121 F.R.D. at 190.

Finally, the Court recognizes that certain documents presented to the grand jury are not subject to the veil of secrecy, because they were created for purposes other than the grand jury investigation. *See Lucas*, 725 F.2d at 1101 ("[W]hen a particular document is sought only 'for its own sake—for its intrinsic value in the furtherance of a lawful investigation,' it does not necessarily constitute a matter occurring before the grand jury.") (quoting *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir.1960)); *Jones v. State of New York*, 62 A.D.2d 44, 403 N.Y.S.2d 935, 939 (4th Dept. 1978) (state investigation report to Governor concerning the police re-taking of Attica prison that was used as an exhibit in grand jury proceeding was not a grand jury material subject to secrecy).

Any such documents or material not subject to secrecy which are in the possession of the District Attorney's office should, therefore, be produced to the plaintiff. If the defendants or the District Attorney contend that such documents or materials are otherwise privileged, then the parties are to follow the procedures outlined in Rule 21(b) of the Eastern District's Standing Orders of the Court on Effective Discovery in Civil Cases ("Standing Orders"), pertaining to discovery of privileged material. Rule 21(b) provides for the identification of each document alleged to be privileged, the nature of the privilege, and a procedure for the party seeking the documents to contest the alleged privilege. The privilege log and other related materials created pursuant to Rule 21(b) shall then be reviewed by the United States Magistrate Judge presiding over discovery in this case, and disclosure may be allowed in accordance with the procedures for disclosure of privileged police records delineated in *Conde*, 121 F.R.D. at 189–197, and any other procedures the Magistrate Judge deems appropriate under the circumstances.

### 2. Disclosure of Documents Not Used by the Grand Jury.

With respect to any requested documents in the possession of the District Attorney's office that were not used in the grand jury proceedings, the Court directs that such documents and materials be produced to the plaintiff. Again, if the defendants or the District Attorney contend that such documents or materials are otherwise privileged, then the parties are to follow the procedures outlined in Rule 21 of the Eastern District's Standing Orders, and disclosure shall be supervised by the United State Magistrate Judge as outlined above.

The defendants object that they cannot comply with the plaintiff's requests, because the requests are overbroad in that they are "without any particularization or categorical parameters as to what documents plaintiff seeks." The defendants further contend that the plaintiff is not entitled to "to an unbridled fishing expedition involving every document ever generated by the Suffolk County District Attorney's office relating to the Village of Greenport Police Department."

■ In this Court's view, some of the plaintiff's demands are specific enough to allow production by the District Attorney's office. The plaintiff seeks documents or other materials related to (1) the District Attorney's investigation into the plaintiff's arrest on May 14, 1993, and (2) the District Attorney's investigation into alleged abuses by the Greenport Police Department. The first category of material is quite specific, and is not overbroad or unduly burdensome.

The second category of material is broader in scope than the first category and is overbroad. The plaintiff's request requires the District Attorney's office to produce every document related to alleged abuses by the Greenport Police Department. This request encompasses more than is necessary for the purposes of supporting the plaintiff's *Monell* claim against the Village. Accordingly, the Court will restrict the plaintiff's demand to documents created or compiled since January 1, 1985, relating to abuses by the Greenport Police Department that are similar to the abuses asserted in this case, namely false arrests, use of excessive force, and abuse of persons critical of the Police Department. Further, the District Attorney's office is directed to produce documents concerning the individual defendant officers and Police Officer Heins with no time limitation.

Accordingly, for the reasons stated above, it is hereby

**ORDERED,** that the plaintiff's motion to compel the District Attorney's office to produce certain documents in its possession related to its investigation of the incidents surrounding the plaintiff's May 14, 1993 arrest and detention, as well as its investigation of alleged abuses and misconduct by the Greenport Police Department, is denied without prejudice to the extent that the plaintiff seeks materials that are part of a grand jury proceeding investigating the Greenport Police Department. The plaintiff is directed to make her request for such documents before the court supervising the grand jury in the manner set forth in this decision; and it is further,

**ORDERED,** that the plaintiff's motion to compel the District Attorney's office to produce certain documents in its possession related to its investigation of the incidents surrounding the plaintiff's May 14, 1993 arrest and detention, as well as its investigation of alleged abuses and misconduct by the Greenport Police Department, is granted to the extent that the plaintiff seeks materials that are not part of any grand jury proceedings investigating the Greenport Police Department, or that, if used in the grand jury proceedings, were created for purposes other than the grand jury investigation. The District Attorney's office is directed to produce such documents *as specified* in this decision. Any claims of privilege with respect to these documents shall be resolved pursuant to Rule 21(b) of the Eastern District's Standing Orders, and, along with any other discovery dispute arising in this case, shall be supervised by United States Magistrate Judge Michael L. Orenstein.

**SO ORDERED.**