Marilyn MICK; Crissy Cochran; Lauren Ashley Mick, By and Through Her Father and Next Friend, Ken Mick; and Ken Mick, Plaintiffs,

v.

Major Kim T. BREWER; Roland Neil Meyers; City of Wichita; United States of America; and Special Agent Scott Redpath, Defendants.

No. 93–1509–JTM.

United States District Court, D. Kansas.

April 24, 1996.

Mark G. Ayesh, Ayesh Law Offices, Wichita, KS, for plaintiffs.

Blaise Plummer, Assistant City Attorney, Wichita, KS, H.E. Jones, of Hershberger, Patterson, Jones & Roth, Wichita, KS, for City of Wichita and police officer defendants.

Connie DeArmond, Assistant U.S. Attorney, Wichita, KS, for U.S. and defendant Redpath.

### MEMORANDUM AND ORDER

MARTEN, District Judge.

Plaintiff Marilyn Mick has brought the present action against three law enforcement officers, Wichita Police Department Major Kim Brewer, Captain Roland Neil Meyers, and United States Secret Service Special Agent Scott Redpath, for events arising out of Russian President Yeltsin's June 18, 1992 visit to Wichita, Kansas. Mick alleges that she was peacefully parked by the roadside to watch Yeltsin's motorcade when she was forcibly removed from her car and beaten by Brewer, and that Meyers and Redpath watched the beating but failed to intervene. Her action against the Wichita officers is brought under 42 U.S.C. § 1983, and her action against Special Agent Redpath is brought as a constitutional violation of the rights recognized in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Also included as plaintiffs are Mick's daughters Crissy and

Lauren (who were present at the scene), and her husband Ken.

The individual defendants moved for summary judgment on the grounds of qualified immunity. On November 3, 1994, the court denied these motions as to Wichita police officers Brewer and Meyers, and granted the motion of special agent Redpath. Both sides appealed this decision, and on February 20, 1996, the Tenth Circuit affirmed the decision with regard to Brewer and Meyers, while reversing the award of qualified immunity to Redpath. Mick has currently placed four motions before the court. These motions seek modification of the scheduling order, leave to amend the complaint and join additional parties, to compel production, and to impose sanctions. The court has carefully reviewed all submissions of the parties and concludes that oral argument will not provide any substantial assistance in the just resolution of the issues raised by plaintiff's motions.

Common to all the motions is Mick's complaint that Lt. Carl Enterkin was not named as a potential witness in either the Internal Affairs (IA) report or in the city's Rule 26 disclosures. Mick alleges that police officers and attorneys for the City of Wichita conspired to conceal the identity of Enterkin as a potential witness.

Mick also complains of the city's assertion of work product privilege with regard to the IA investigation report. The report was previously presented to the court for *in camera* inspection, and the report then was produced to Mick with portions (including the conclusion) redacted. Mick contends the whole report was an ordinary police internal report, and hence discoverable, and that the city's attorneys only became involved in the report afterward in order to provide a basis for withholding the report from discovery. Finally Mick complains that the city's previous assertion of a qualified immunity defense was frivolous.

*1. Motion to Amend*

■ The motion to amend the complaint seeks leave to add a claim of conspiracy, alleging the city conspired to conceal the identity of Enterkin. Specifically, Mick

wants to add as parties Lieutenants Randal Landen, Randy Mullikin, former Chief of Police Rick Stone, and Deputy Chief of Police Paul Goward, who allegedly participated in a conspiracy to withhold Enterkin's name as a potential witness.

Judge Kelly denied a similar motion by Mick on September 2, 1994. In denying the motion, the court noted that Enterkin had arrived on the scene after the incident had begun and therefore had no knowledge as to the necessity for Brewer's use of force. Enterkin's knowledge of the subsequent course of events, while relevant, was not such that the failure to name him as a witness was "any credible evidence of conspiracy, nor is it any justification for drastically altering the nature of the case by amendment at this late date." (Memo. and Order, Nov. 3, 1994, at 12.)

Enterkin has submitted an affidavit stating that by the time he arrived at the scene, the incident was essentially over. As noted earlier, Mick's current round of motions is premised largely upon the affidavit of Wichita Police Lieutenant Vincent Garcia. Garcia's affidavit is attached to each of Mick's motions (except the motion to amend the scheduling order).

■ Leave to amend a complaint is freely given when justice requires. Fed.R.Civ.P. 15(a). In deciding whether to grant leave to amend, the court may consider undue delay, bad faith or dilatory motive, and undue prejudice to the opponent. *Robinson v. Michigan Consol. Gas,* 918 F.2d 579, 591 (6th Cir.1990); *Moore v. Kayport Pkg. Expr.,* 885 F.2d 531, 538 (9th Cir.1989).

■ Here, the court finds that plaintiff's motion must be denied. There is a preliminary issue of whether a conspiracy action is permissible under § 1983 for the act of interfering with discovery in a civil action, as opposed to the more serious act of attempting to thwart the plaintiff's right of access to the courts by preventing him or her from filing a complaint. The Tenth Circuit has clearly indicated in *Wilson v. Meeks,* 52 F.3d 1547, 1557 (10th Cir.1995), an agreement with the narrower view—that such a conspiracy action is permissible only for preventing

right of access to the courts. Here, even assuming as true all of Mick's allegations, the actions of defendants do not represent a denial of her right of access to the courts, but a failure to comply with discovery requirements.

More importantly, the court finds that the motion should in any event be denied in light of the advanced state of the case, the substantial prejudice to the defendants in drastically altering the nature of the case at this time, and the minimal evidence to support Mick's claims of conspiracy. If the proposed amendments are allowed, the case would change from the straightforward question of whether Brewer beat Mick illegally and unjustifiably, and whether Meyers and Redpath wrongfully failed to stop him, to the larger question of nearly a dozen persons keeping the name of Carl Enterkin from counsel for Mick.

There is virtually a complete absence of admissible evidence of conspiracy. Garcia provides little if any such evidence in his affidavit. For example, he discusses an "acrimonious confrontation" between Enterkin and Brewer (Pltfs.' Mtn. to Amend, Ex. A, Garcia Aff. at 2–3), but does not state that he was physically present at the time, nor does he reveal who he heard the information from. Similarly, Garcia states that he "became aware" that Kelly Rundell, a City of Wichita attorney, called Enterkin twice. Garcia then proceeds to discuss what Enterkin told Rundell as to the incident. Again, there is no indication how Garcia came by this information.

And this is largely the problem throughout Garcia's affidavit. Almost every sentence either does (or should) begin with the phrase "I became aware" or "I also learned" of a given fact. Almost no matters discussed in the affidavit appear to be direct, personal knowledge of Garcia. Rather, his statement is arrived at through general (and apparently multiple) hearsay at the Police Department.

Garcia prefaces his statement with the observation:

Through conversations with my fellow police officers, my personal investigation and discussions with others, I have been made aware of significant information about (i) the Marilyn Mick incident; (ii) the conduct of Major Brewer; and (iii) the conduct of those in charge of the defense of the case. Most concerning, I became aware of efforts on the part of the Wichita Attorney's Office, Chief of Police Stone, and perhaps others to "bury" (conceal the identity of) a key law enforcement eyewitness to the incident wherein Major Brewer exerted excessive force on Marilyn Mick.

(Pltfs.' Mtn. to Amend, Ex. A, Garcia Aff. at 2.) While Garcia does state that some of the information for his statement was received from Lieutenants Landen and Ralph Clark, and Detective Randy Mullikin, he does not then proceed to delineate what specific information was given by these individuals.

The failure to identify Enterkin in the IA report may simply be due to the fact that Enterkin, arriving late at the scene, did not file a separate report on the incident. More importantly, the allegation of "conspiracy" to conceal Enterkin's identity is less than compelling where defendant Brewer, in response to interrogatories from Mick, freely and explicitly identified Enterkin as having been present at the scene. There is no indication that any defendant has directly misled Mick as to the absence of Enterkin from the scene—no indication that Mick ever asked Brewer, Meyers, or the city for the names of other officers who were physically at the scene on the day in question and received the response that there were none. Equally, there is no indication that Mick subsequently attempted to depose Enterkin.

In its response, the city attaches affidavit testimony from Lieutenants Landen and Ron Harris stating they have been misquoted in Garcia's affidavit. The City also notes Mick has never deposed Landen or Harris.

The court finds this case will proceed to trial on the issues currently raised by the complaint filed by plaintiff. Allegations of conspiracy and claims against persons not currently parties to this action will not be permitted. Further, given the fact that the court has addressed this issue twice now, the plaintiff is instructed that it does not wish to do so a third time. If plaintiff at some time obtains admissible evidence showing that En-

terkin actually saw something which he left out of his affidavit, such evidence may be a suitable subject for cross-examination at trial. Expanding the present action into a broad civil conspiracy involving the highest officers of the Wichita Police Department and the City Attorney's Office is not warranted.

### 2. *Motion to Compel*

[4, 5] In the present motion, Mick seeks production of the entire IA report and file on the incident. The court has previously ordered the city to produce the portion of the IA report detailing what the officer preparing the report learned in the course of his investigation. Evidentiary materials gathered in the course of an internal police investigation resulting from alleged use of excessive force are generally discoverable. *See Griffith v. Davis,* 161 F.R.D. 687 (C.D.Cal. 1995) (permitting discovery of portion of reports which contain memorandum of interview with defendant IRS officer accused of killing wife of plaintiff); *Mercy v. County of Suffolk,* 93 F.R.D. 520 (E.D.N.Y.1982) (permitting discovery of an internal affairs "narrative report" containing results of witness interviews). The court has not identified any case authorizing discovery of a report's conclusions, when the report has been commissioned by and presented to counsel for the accused officers.

Here the IA report performed by Lieutenant Landen was made on April 8, 1993. It is true, as Mick points out, that the top of the report states: "ATTENTION: CHIEF OF POLICE RICK STONE." However, Mick errs in suggesting that on the basis of this salutation the city's attorneys were not involved in the process by which the report was generated. On January 13, 1993, several months prior to the completion of the IA report, counsel for the city wrote to plaintiff's attorney stating that the city had referred Mick's complaint to the police department and requested an investigation.

Moreover, the heading of the IA report states, just below the previously quoted language: "SUBJECT: CLAIM FOR DAMAGES, MARILYN MICK." The text of the report then prefaces its factual findings with the statement: "This report is in response to a Blue Letter from City Attorney Phil Alexander, requesting a recommendation regarding the claim of Marilyn Mick in the amount of $500,000.00." (Pltfs.' Mtn. to Compel, Ex. B at 1.)

Judge Kelly's earlier decision to withhold portions of the report was correct. Of the 17 single-spaced, typewritten pages of the report, Mick has been given all but two, those containing the report's conclusions. Judge Kelly reviewed the full report *in camera* and decided to withhold the last two pages as not containing discoverable information. All of the factual findings contained in the first portion of the report have been produced to Mick.

Mick has failed to show that the conclusion section of the IA report was a routine, internally-generated police report. Rather, the evidence indicates that the report was prompted by Mick's claim for damages, which had been submitted to the city's attorney pursuant to K.S.A. 12–105b. Accordingly, Mick's motion to compel will be denied.

### 3. *Motion for Sanctions*

Mick seeks sanctions for the refusal of the city to supply the complete IA report. As noted earlier, the court finds the conclusion of the report is privileged and not discoverable. In any event, sanctions would be inappropriate since the city did not unilaterally withhold the IA report but submitted the matter to the court and subsequently withheld the report's conclusion pursuant to Judge Kelly's order.

Next, Mick seeks sanctions for failing to identify Enterkin as a witness. Enterkin, as noted earlier, has averred he has no significant information as to the Mick incident. Mick, of course, now alleges (on the basis of the Garcia affidavit) that Enterkin has important information which he has concealed. Regardless of the merits of the Garcia affidavit, the court notes that if Enterkin is willing to swear under oath to this court that he had no important information relating to the Mick incident, there is no reason that he would not, and indeed did not, state the same thing to the city. Absent proof that the city

consciously withheld the name of a material witness, the motion for sanctions will be denied.

■ Mick also seeks sanctions for the qualified immunity defense of Brewer and Meyers, which was rejected by this court and by the Tenth Circuit on appeal. The rejection of that argument by this court and the Tenth Circuit does not entitle the plaintiffs to sanctions. If mere failure of an argument were sufficient, sanctions would be imposed in every action. The test is whether the argument of Brewer and Meyers was frivolous under existing law, and the court cannot make that finding under the circumstances of this case. (The court notes that while the Tenth Circuit rejected the qualified immunity defense on the ground the law regarding excessive force was clearly established by 1992, it also explicitly denied the motion advanced on appeal by Mick for sanctions. *Mick v. Brewer*, 76 F.3d 1127, 1137 n. 7 (10th Cir.1996)).

The defense raised in this case was premised upon language contained in the Tenth Circuit's decision in *United States v. Merkley*, 988 F.2d 1062, 1064 (10th Cir.1993), stating that "[t]here are no hard-and-fast rules regarding the reasonableness of force used during investigatory stops, and prior cases have eschewed establishing any bright-line standards for permissible conduct." In the appeal from Judge Kelly's ruling, the Tenth Circuit held this language did not modify the basic rule against the use of excessive force, thereby entitling Brewer and Meyers to qualified immunity. Even if the defense of qualified immunity was rejected, there was still a colorable basis for raising the argument. The court finds the argument, even if unsuccessful, was not frivolous or otherwise a sufficient basis for the imposition of sanctions.

Mick next seeks sanctions for alleged violation of the tolling agreement entered into between the parties. This agreement provided that the parties would waive the statute of limitations defense and attempt to resolve the dispute in a prompt and good faith manner. Mick alleges that the city has violated this agreement's general statement of intent by dilatory and bad faith tactics. The court finds that having failed to demonstrate any specific misbehavior by the city, Mick should also be denied an award of sanctions under the general provisions of the tolling agreement.

### 4. *Motion to Amend Scheduling Order*

The court finds the present motion should be granted, though not on the grounds cited by Mick. Mick cites as reasons for amendment the need to add new parties and conduct discovery as to them, and the need to discuss which parties remain in this action. As noted earlier, the court finds the action should proceed on the basis of the existing allegations. With regard to the plaintiffs, Judge Kelly previously determined that Ken and Lauren Brewer and Crissy Cochran had no constitutional claims. Mick correctly points out this determination does not directly resolve their pendent state law claims (battery, assault, emotional distress and false imprisonment). The court must conclude that since these actions allege matters substantially different from the core claims advanced by Mick, the claims of the other plaintiffs should either be dismissed without prejudice, as being unnecessary to resolve Mick's federal claims, or with prejudice, in light of the absence of evidence in support of the individual claims. That matter may be resolved by appropriate motion of defendants. The point here is that there is no need to provide additional delay for the sole purpose of addressing the status of these parties.

IT IS ACCORDINGLY ORDERED this 23d day of April, 1996, that the plaintiffs' motion to add parties and amend complaint (Dkt. No. 134), motion for sanctions (Dkt. No. 135), motion to modify scheduling order (Dkt. No. 136), and motion to compel (Dkt. No. 137) are hereby denied.

In light of previous delays in this action, a new scheduling order will be implemented. The court has scheduled a status conference on Friday, May 10, 1996, at 11:00 a.m.